Gottlieb STROBEL, Plaintiff
and Respondent,

v.

NORTHWEST G. F. MUTUAL INSURANCE
COMPANY, a corporation, De-
fendant and Appellant.

Civ. No. 8384.

Supreme Court of North Dakota.

Sept. 19, 1967.

Kretschmar & Kretschmar, Ashley, and Paul O. Kretschmar, Eureka, S. D., for defendant and appellant.

Max A. Wishek, Ashley, for plaintiff and respondent.

TEIGEN, Judge.

This is an appeal from a judgment in a case tried to the court without a jury and trial de novo is demanded.

The judgment appealed from allows the plaintiff to recover on a fire insurance policy, against the defendant insurance company, for the fire loss of a barn located on premises owned by another but occupied by the plaintiff's assignor, who was the named insured. The trial court allowed recovery on the theory that the insured had an insurable interest in the barn in excess of the face amount of the policy.

The named insured was Duane Harter. He assigned the proceeds from the insurance policy to the plaintiff, who brought this action.

The defendant admits that Harter had an insurable interest in the barn at the time the defendant issued its policy because Harter owned the land upon which it stood. However, Harter subsequently lost title to the land by sheriff's deed on execution sale and, at the time of the fire, the land was owned by Goebel Brothers, Inc., the purchaser at the execution sale.

The plaintiff, on the other hand, claims the insured barn was never a part of the real estate but it was personal property and that Harter owned the barn when it was destroyed by fire.

The trial court found that the plaintiff established a prima facie case of ownership of the insured property in Harter at the time of the fire and that the evidence introduced by the defendant was insufficient to overcome plaintiff's prima facie case. The case being before us for trial de novo, it requires this court to try anew the questions of fact. Section 28–27–32, N.D. C.C. In doing so, we are not bound by the findings of the trial court, either as to law or the facts. Englert v. Dale, 25 N.D. 587, 142 N.W. 169. However, the trial court's findings are entitled to appreciable weight,

although not with the same presumption of correctness as in a case not triable de novo. Pauly v. Haas, N.D., 84 N.W.2d 302.

The only issue is: Did Harter have an insurable interest in the barn when it burned?

Our laws on insurance provide that the object of insurance is indemnity of the insured, and if the insured has no insurable interest, the contract is void. Section 26-02-04, N.D.C.C. An interest insured must exist when the insurance takes effect and when the loss occurs. Section 26-02-05, N.D.C.C. An insurable interest is defined by Section 26-02-06, N.D.C.C., as follows:

Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might damnify directly the insured is an insurable interest, and may consist in:

1. An existing interest;

2. An inchoate interest founded on an existing interest; or

3. An expectancy coupled with an existing interest in that out of which the expectancy arises.

The first question we shall decide is whether Harter had an existing interest in the barn when it was destroyed by fire. We shall approach this question from the standpoint of whether the barn was personal property or fixed to the real estate and thus real property.

Section 47-01-02, N.D.C.C., defines property as:

1. Real or immovable; or

2. Personal or movable.

Real property consists not only of land which is immovable but also that which is affixed to the land, that which is incidental or appurtenant to the land, and that which is immovable by law. Section 47-01-03, N.D.C.C., Mueller v. Mercer County, N.D., 60 N.W.2d 678. Fixtures, such as a barn when permanently attached to the soil, are a part of the real estate. Woolridge v. Torgrimson, 59 N.D. 307, 229 N.W. 805. Fixtures are defined by statute as:

A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.

Section 47-01-05, N.D.C.C.

Under this statute, we have held that buildings resting permanently upon the land are real property, under the provisions of the above statute providing "A thing is deemed to be affixed to land when it is * * * permanently resting upon it, as in the case of buildings, * * *." See also Nelson v. Murton and Nelson v. Kloster, 68 N.D. 108, 277 N.W. 390.

Personal property is defined by statute to mean and include every kind of property that is not real. Section 47-01-07, N.D.C.C.

We said in Gray v. Krieger, 66 N.D. 115, 262 N.W. 343, that in making a determination as to whether personal property became a fixture under the statute, the court will look to the intention of the person making the annexation, the manner in which the building is annexed, and its adaptation to the use of the realty. We have also held that by agreement of the parties interested, buildings located upon land may be considered personal property. Kittelson v. Collette, 61 N.D. 768, 240 N.W. 920; Newell v. McMurray, 51 N.D. 901, 201 N.W. 845; Mathews v. Hanson, 19 N.D. 692, 124 N.W. 1116.

In this case there is no contest between Harter, who claims ownership of the barn,

and Goebel Brothers, Inc., who is the owner of the land. This contest is between the assignee of Harter, who claims ownership of the barn, and Harter's insurer. Walter Goebel, president, testified that Goebel Brothers, Inc., makes no claim to the barn nor insurance proceeds. Goebel Brothers, Inc., however, had been owner of the land under a sheriff's deed on execution sale for only a few months when the barn burned. Prior thereto Harter was first a purchaser on a contract for deed and then owner by warranty deed.

The evidence establishes that Harter had purchased this land on contract for deed in February of 1957. The contract provided for seven annual installment payments, the last payment being due October 15, 1962. In November of 1958, Harter mortgaged the land to Kulm Credit Union for $4,000. The mortgage was payable in installments, the last installment due in November 1962. In December of 1959, Harter mortgaged the land to John Harter for $9,000 due in five years. In October of 1960, he purchased the barn in question and caused it to be moved from the land where it formerly stood to the land which he was purchasing on contract. He testified that he had it placed on blocks. This was corroborated by Walter Goebel, who testified that he saw the barn in 1962 or 1963 and that it was then standing on blocks. The only description in the record of the blocks is that they consisted of used railroad ties sawed into blocks. It also appears that some cement blocks were used on which support poles were placed. Harter lived on the land during the period after its purchase and until the barn burned on February 25, 1965, except from September 1963 to October 1964 when he and his family lived at Sisseton, South Dakota, for about a year. The balance of the time was spent on his mother's farm located about one-half mile from the land in question. There was also a house on the farm which burned in November of 1961. From November 1961 to September 1962, he and his family lived in a trailer house. The land in question consists of one-quarter section or about 160 acres. Of this land, 72 acres were crop land and the balance was used for pasture and farm yard. Harter's principal occupation was milking cows and raising feeder cattle. The cultivated land was used principally for raising feed grains. Harter also was an auctioneer. He testified his principal income was from the sale of cream. Harter, however, was not engaged in farming in 1963. That year the land was rented to another on a share basis. It appears that Harter did not farm from September 1962, when he moved with his family to Sisseton, South Dakota, until he returned to North Dakota and resided on his mother's farm some time in the late fall of 1963.

Harter did not obtain a deed to the land which he was purchasing on contract until April of 1964. It appears Harter was heavily indebted. In addition to mortgages listed above, Harter gave a quit claim deed in April 1962 to one Elmer T. Thurow, trustee. He testified he was not indebted to him but that he was indebted to a Mr. Tolafson of Aberdeen, South Dakota, and that the deed was to be held in trust. He also was indebted to Goebel Brothers, Inc. This corporation sued Harter and judgment was entered in its favor in the amount of $4,668.38 in December of 1961. Several executions were issued on this judgment and the sheriff levied upon the land in question in October of 1963. Following the sheriff's sale, sheriff's certificate of sale was issued in November 1963. It provided a one-year period of redemption. It was during this period of redemption that Harter returned to his farm and, in July of 1964, he placed feeder cattle on the farm and began to make certain repairs upon the barn. He testified he expended from $600 to $800, plus his own labor, in improving the barn and that in October of 1964 he moved a house which had been purchased for him on to the land and also

placed it on blocks. He then moved his family into the house and brought milch cows to the farm. Thus, in October of 1964, he had approximately 50 head of cattle, 17 of which were milch cows and 33 of which were feeder cattle. Harter continued to occupy the farm and to handle his livestock as a dairy farmer. The barn was used for this purpose. Sheriff's deed in favor of Goebel Brothers, Inc., was issued and delivered on November 28, 1964. Harter, however, continued to remain on the farm and carried on his normal activities as a dairy farmer and auctioneer. He also wired the farm, including the barn, for electricity. He built fences and did the usual things necessary to carry on his operation of milking cows and feeding cattle. The record does not disclose whether a tenancy arrangement was entered into with Goebel Brothers, Inc. However, it appears that Harter and his family were still residing on the farm at the time of the trial of this action in November of 1965. The Harters have five children, which at the time of trial were from ages eleven months to six years. There is no issue on the facts.

It is the contention of the defendant under these facts that the barn was a fixture and, therefore, a part of the real property under our holding in Nelson v. Kloster, supra. In that case, Kloster purchased land on contract for deed in 1918. It also was subject to a mortgage and the amount of the payments is not shown. The land contained no buildings and Kloster built a house thereon, later adding an addition and digging a cellar. He also bought and moved on a barn and then he continued living there with his 'family until 1931 when the land was lost for non-payment of taxes. Thereafter, the county sold the land to the plaintiff. Kloster moved from the land in December of 1931, leaving the buildings thereon and made no attempt to get possession of them until after the commencement of the action and then merely asserted title to the

buildings. The barn in that case was resting on the ground, except blocks were placed under it to level it against the inequalities of the ground. Kloster had testified that it was his intention that the buildings remain personal property because "If things don't turn out right I don't want to lose my buildings. I want it to remain personal property." This court held that the house and the barn were "permanently resting" on the land and it was clear the claim that the buildings at all time were personal property was an afterthought and that although "intent" must be considered, the acts spoke louder than the words.

■ We do not feel that the instant case is governed by Nelson v. Kloster, supra. The barn was not set upon the ground and blocks used to level it because of the inequalities of the land. We find the barn was placed on the blocks in a manner consistent with Harter's claim that it was not "permanently attached" to the land. Although the barn, resting on blocks, apparently was adaptable to the use of the realty to house cattle, it is apparent from the evidence that Harter's operation was never stable, but that he was continually deeply indebted and stood a very real risk of losing all he had. The barn, after it was sold and severed from the land where it originally stood, became the personal property of Harter and remained personal property while in the process of being moved. It was removed from the moving equipment and placed on blocks where it continued to remain until it was destroyed by the fire. It was never annexed to the land by being permanently attached thereto. It, therefore, retained its character as personal property.

■ Under these circumstances, the burden of proof of the annexation, so as to make the barn a party of the realty, is on the one asserting that it has become a part of the realty. 36A C.J.S. Fixtures § 63, p. 731; 22 Am.Jur., Fixtures, Sec. 76.

We find the defendant has failed in this proof.

For these reasons, we hold that the judgment of the trial court is affirmed.

STRUTZ, C. J., and ERICKSTAD, KNUDSON and PAULSON, JJ., concur.