**FAMILY CENTER DRUG STORE, INC.,**
Plaintiff and Respondent,

v.

**NORTH DAKOTA STATE BOARD OF PHARMACY, Defendant and Appellant.**

Civ. No. 8676.

Supreme Court of North Dakota.

Dec. 4, 1970.

Rehearing Denied Dec. 23, 1970.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for defendant and appellant.

Solberg, Anderson & Stewart, Fargo, for plaintiff and respondent.

ERICKSTAD, Judge.

By notice of appeal dated the 11th of November, 1969, the North Dakota State Board of Pharmacy asserts that it appeals to this court from a judgment entered and

rendered by the district court of Burleigh County in favor of Family Center Drug Store, Inc., a corporation. The judgment referred to in the notice of appeal is in fact an order made by the said district court after that court had made findings of fact and conclusions of law subsequent to a hearing before that court on an appeal to that court from an order of the North Dakota State Board of Pharmacy, dated September 22, 1969, denying Family Center Drug a permit to open and operate a pharmacy. The determinative part of the district court's order reversing the order of the Board of Pharmacy reads as follows:

"NOW, THEREFORE, IN ACCORD-ANCE THEREWITH, IT IS HEREBY ORDERED AND DECREED as follows:

"1. That the Court CANNOT AND DOES NOT AFFIRM the decision of the North Dakota State Board of Pharmacy, which denied a permit to establish and operate a pharmacy to the appellant, Family Center Drug Store, Inc.

"2. The Court hereby remands this matter to the North Dakota State Board of Pharmacy and directs that said North Dakota State Board of Pharmacy issue forthwith a permit to operate a pharmacy or drug store in the State of North Dakota to the appellant, Family Center Drug Store, Inc., in accordance with the appellant's application dated October 18, 1968.

"Dated this 15th day of October, 1969."

By way of background information, it should be noted that prior to the October 15, 1969, order the district court had, by order dated May 29, 1969, determined that Family Center Drug satisfied the statutory requirements relative to the issuance of a permit, insofar as the ownership of the store was concerned, but that it had not met the necessary requirements of separateness and control required by the statutes, and the court accordingly remanded the case to the North Dakota State Board of Pharmacy for a further hearing relative to that issue. The May 29 order of the court resulted from an appeal by Family Center Drug from an order of the Pharmacy Board dated December 4, 1968, denying its October 18, 1968, application for a permit.

Pursuant to the district court order of the 29th of May, 1969, the North Dakota State Board of Pharmacy conducted a hearing and subsequent thereto entered its order, dated September 22, 1969, denying the application of Family Center Drug. The pertinent part of that order reads:

" * * * the applicant has failed to comply with the requirements of the statutes of the State of North Dakota, in regard to the issuance of a pharmacy license, the board being of the opinion, that in addition to other matters stated previously, the testimony shows that the operation of such pharmacy, in conjunction with a general food store, with no identifiable segregation of such pharmacy from the general food store apparent to the customer, will lead to a situation where effective control and safeguard of public interest cannot be maintained; and, further, that the said corporation, Family Center Drug Store, Inc., is a fraud and a sham, and that its purported officers and directors have, in fact, no actual control over the operation of such business; and that it is, in effect, a Snyder Drug Store, under and by virtue of the franchise and other agreements entered into between the said Family Center Drug Store, Inc., and the said Snyder Drug Store; and that such arrangements are an attempt to evade the requirements of the statutes of the State of North Dakota."

The sections of our Code, or parts thereof, pertinent to a determination of the issues raised by this appeal, follow:

"*43-15-34. Operation of pharmacy—Permit required—Application—Fee.*—No person, copartnership, association, or corporation shall open, establish, operate, or maintain any pharmacy within this state

without first obtaining a permit so to do from the board. Application for the permit shall be made upon a form to be prescribed and furnished by the board and shall be accompanied by a fee of thirty dollars. A like fee shall be paid upon each annual renewal thereof. Separate applications shall be made and separate permits required for each pharmacy opened, established, operated, or maintained by the same owner."

"43-15-35. Requirements for permit to operate pharmacy.—The board shall issue a permit to operate a pharmacy, or a renewal permit, upon satisfactory proof that:

"1. The pharmacy will be conducted in full compliance with existing laws and with the rules and regulations established by the board;

\* \* \* \* \* \*

"4. The management of the pharmacy is under the personal charge of a pharmacist duly registered under the laws of this state;

"5. The applicant for such permit is qualified to conduct the pharmacy, and is a registered pharmacist in good standing or is a partnership, each active member of which is a registered pharmacist in good standing, or a corporation or association, the majority stock in which is owned by registered pharmacists in good standing, actively and regularly employed in and responsible for the management, supervision, and operation of such pharmacy; \* \* \*"

North Dakota Century Code.

The Board of Pharmacy asserts that it denied Family Center a permit for two reasons and that for those reasons the district court is in error in overruling the Board. Those reasons as stated by the Board are:

"1. That Family Center Drug Store, Inc., did not comply with Section 43-15-35, which requires that a registered pharmacist shall own the majority of stock of the corporation; and shall be responsible for the management, supervision, and operation of the pharmacy.

"2. That Family Center Drug Store, Inc., did not have an identifiable segregation of the pharmacy from the super market food store area; and would, therefore, not permit effective control as a safeguard of the public interest."

Before we consider those points and thus attempt to determine the merits of this appeal, let us first consider the scope of this court's review on this appeal.

It is the position of Family Center Drug that the trial court's findings on this appeal must be accorded appreciable weight. In support thereof, Family Center Drug refers us to Strobel v. Northwest G F Mutual Insurance Company, 152 N.W.2d 794 (N.D. 1967); Strobel v. Strobel, 102 N.W.2d 4 (N.D.1960); and Pauly v. Haas, 84 N.W. 2d 302 (N.D.1957).

The finding of the district court to which Family Center Drug would have us give appreciable weight is the finding that the proposed pharmacy would be adequately separated and segregated from the main store, for the preservation of public health. It is Family Center Drug's position that the trial court's findings relative thereto should be given appreciable weight, especially because in their view such segregation or separation is not a requirement of law, but one that could be at the most inferred from the probable intent of the law.

It is important to note here that in recent cases this court has taken the view that the scope of review of the district court on an appeal from an order of an administrative agency and the scope of review of this court on an appeal from the district court in a case involving an order of an administrative agency is limited.

In a recent case construing the effect of our Administrative Agencies Uniform Practice Act, which applies in this case, to a case involving an appeal from an order of the Workmen's Compensation Bureau, after reviewing the history of the Uniform Practice Act, as well as the North Dakota Workmen's Compensation Act, we said:

"* * * we are now inclined to believe that a trial de novo in the district court on the record made before the administrative agency and in this court on an appeal from the district court, as it relates to a determination of the facts, should be limited to determining whether there is substantial evidence to support the administrative agency's findings of fact. Any other construction of the statutes ignores the provision of § 28–32–19 which requires that after a hearing on an appeal from a decision of an administrative agency, the court shall affirm the decision of the agency unless it shall find that the findings of fact made by the agency are not supported by the evidence." Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104, 111 (N.D.1969).

A further quotation from that case follows:

"For our most recent statement and application of the substantial evidence rule in a public service commission case, see Application of Otter Tail Power Company (Cass County Electric Co-op. [Inc.] v. Otter Tail Power Co.) 169 N.W. 2d 415 (N.D.1969.)" Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau, 171 N.W.2d 104, 111 (N.D.1969).

It, therefore, follows that it is our duty in this appeal, as the issue relates to the evidence, to determine whether there is substantial evidence to support the findings of fact of the administrative agency. If there is such evidence, it is our duty to affirm the administrative agency's decision as to that issue.

Returning to the issues as raised by the Pharmacy Board, let us first consider whether Family Center Drug has complied with Subsections 1, 4, and 5 of Section 43–15–35, N.D.C.C.

The Board contends that the corporation formed as Family Center Drug Store, Inc., was created by Red Owl Stores, Inc., as a subterfuge, in an attempt to comply with Section 43–15–35, Subsection 5, N.D.C.C., which requires when the applicant is a corporation that the majority of the stock of the corporation be owned by a registered pharmacist in good standing, actively and regularly employed in and responsible for the management, supervision, and operation of the pharmacy. It is the Board's position that the intent of that section is that a pharmacist, even when the applicant is a corporation, be in the actual control of the corporation, and that in this case it is obvious that control is held by Red Owl Stores, Inc., or its subsidiary, Snyder's Drug Stores, Inc.

Family Center Drug Store, Inc., which we have heretofore referred to and shall hereinafter refer to as Family Center Drug, is a corporation which has issued ten shares of stock. Six shares of that stock, purchased at the price of $100 per share, are owned by Kenneth Swanson, a registered pharmacist, who is presently employed by Snyder's Drug Stores, Inc., in the State of Minnesota. Four shares of stock, also purchased at $100 per share, are owned by Red Owl Stores, Inc.

Pertinent parts of the sublease entered into between Red Owl and Family Center Drug read:

"4. * * * It is agreed that in the event: '

\* \* \* \* \* \*

"(e) The Franchise Agreement between SNYDER'S DRUG STORES, INC. and Second Party shall be terminated; or

"(f) Second Party shall default under any other agreement between First Party and Second Party, or between SNY-

DER'S DRUG STORES, INC. and Second Party, including but not by way of limitation, chattel mortgages, conditional sales contracts and factors' lien agreements.

"THEN, and in any such event, Second Party does hereby authorize and empower the First Party to:

"(i) Terminate any or all of the agreements referred to in 4(f) above. The rights and remedies herein set forth shall in no way limit the rights and remedies of First Party under such agreements for the default of Second Party thereunder, or the rights and remedies of SNYDER'S DRUG STORES, INC. for the default of Second Party under any agreement.

"(ii) Cancel or annul this Sublease at once and to re-enter the demised premises immediately, and by force if necessary, without any previous notice of intention to re-enter and remove all persons and their property therefrom, and to use such force and assistance in effecting and perfecting such removal as First Party may deem necessary and advisable to recover full and exclusive possession of the demised premises, whether in possession of the Second Party or of third persons or otherwise."

These provisions indicate that Red Owl may terminate the lease should the Franchise Agreement between Snyder's Drug Stores, Inc., and Family Center Drug be terminated, or should Family Center Drug default under any agreement between Snyder's Drug Stores, Inc., and Family Center Drug.

The Franchise Agreement requires that Family Center Drug purchase from Snyder's Drug Stores, Inc., all of its retail requirements as provided in 2(b) (1):

"2. OBLIGATIONS OF THE RETAILER. The Retailer shall:

\*   \*   \*   \*   \*   \*

"(1) purchase from Company all of Retailer's requirements of merchandise regularly carried in stock and offered for sale by Company, and maintain sufficient stocks of Company's merchandise to meet consumer demands;"

Section 3 of the Franchise Agreement provides for termination on thirty days' written notice.

"3. TERMINATION. This Agreement shall remain in force from the date hereof until terminated by either party for any reason; provided, however, that the party desiring to terminate shall give the other party at least thirty (30) days' written notice prior to the date on which it desires to exercise its election to terminate."

Excerpts from the transcript of the hearing before the Pharmacy Board, especially pertinent to the issue of control, follow:

"MR. CONMY: \* \* \* In the sublease agreement, Mr. Swanson, it refers to 'other agreements' with Snyder Drug Stores, and I gather separate and apart from the franchise agreement. Could you describe for me what those other agreements are?

"MR. JOHNSON: Would you specify the parties, Mr. Conmy?

"MR. CONMY: Other agreements running between Family Center Drug Stores, Incorporated, and Snyder Drug Stores, Incorporated.

"MR. SWANSON: This—the 'other agreements' is a verbal agreement in that they will back me as far as inventory and operating cash to a sum of twenty thousand dollars.

"MR. CONMY: Carrying this one step further: It also refers to 'chattel mortgages, conditional sales contracts and factors' lien agreements.' Is it your contemplation that these will be the documents securing Snyder Drug Store in terms of this credit extension by Snyder Drug Store to Family Center Drug Store, Incorporated—if that isn't too cumbersome a question?

"MR. JOHNSON: Why don't you rephrase it? Do you understand the question, Mr. Swanson?

"MR. SWANSON: No. At the present time, no.

"MR. CONMY: Are there any—currently any chattel mortgages, conditional sales contracts or factors' lien agreements in existence between Family Center Drug Stores, Incorporated, and any other party, including but not limited to Snyder Drug Stores, Incorporated?

"MR. SWANSON: At the present time, no.

"MR. CONMY: No. Do you contemplate there will be any in existence?

"MR. SWANSON: There will be no chattel mortgages. A security agreement on the inventory that I will carry on the store, yes.

"MR. CONMY: And if they're in favor of Snyder Drug Store, they are as security to Snyder Drug Store for the provision of stock and operating capital to Family Center Drug Stores, Incorporated?

"MR. SWANSON: Yes.

"MR. CONMY: Okay. We've come full circle then, back to the original question.

"The franchise agreement, which is attached to Exhibit 2, and the oral agreement for the provision of a twenty-thousand-dollar credit extension line by Snyder Drug to Family Center Drug, are those the total of the agreements presently in existence btween Family Center Drug Store, Inc., and Snyder Drug Store?

"MR. SWANSON: Yes.

"MR. CONMY: Question 19: 'Are you, as Manager and majority stock owner of Family Center Drug Store, Inc., aware of the business relationship, if any, between Snyder's Drug Stores,

Inc., and your lessor, Red Owl Stores, Inc.?

"MR. SWANSON: Yes, I am.

"MR. CONMY: Would you tell what that connection is, please?

"MR. SWANSON: Snyder Drug Stores is owned by Red Owl, but are two separate corporations."

Pertinent also is the following from the transcript:

"MR. CONMY: * * *

"Carrying this a step further, Mr. Swanson: Is there any employment contract or agreement in existence between yourself and Family Center Drug Stores, Incorporated?

"MR. SWANSON: Well, upon issuance of a license, there will be.

MR. CONMY: Can you describe generally what that employment agreement will constitute? What will be in it?

"MR. SWANSON: I will be the Manager or Manager in charge of that area and will receive a salary for that.

"MR. CONMY: From what entity?

"MR. SWANSON: You mean the amount?

"MR. CONMY: No. Who will pay the salary?

"MR. SWANSON: Snyder Drug.

"MR. ANDERSON: You mean Family Center Drug.

"MR. SWANSON: Well, no. I'm sorry. It is Family Center Drug.

"MR. CONMY: By whom are you currently employed?

"MR. SWANSON: Snyder Drug.

"MR. CONMY: Is there a contemplated change in the amount of your salary upon the starting of business of

Family Center Drug Stores, Incorporated?

"MR. SWANSON: No, not to a great degree.

"Mr. CONMY: Well, has any change been discussed?

"MR. SWANSON: Yes.

"MR. CONMY: With whom has it been discussed?

"MR. SWANSON: With Mr. Kiefer.

"MR. CONMY: Who is Mr. Kiefer?

"MR. SWANSON: Well, he's the Vice President of Snyder Drug."

■ In light of the relationship between Red Owl, Snyder's Drug, and Family Center Drug, as evidenced by the sublease, the Franchise Agreement, the oral agreement for funding the operation of the drug store, and the influence of the vice president of Snyder's Drug upon the management of Family Center Drug, it appears to us that the actual control of Family Center Drug is in Red Owl and Snyder's Drug; that Family Center Drug Store, Inc., is merely a corporation on paper; and that such a corporate arrangement does not meet the responsibility feature requiring that control of a corporately owned pharmacy be in a pharmacist who owns a majority of the stock of the corporation, contemplated by Subsection 5 of Section 43–15–35, N.D.C.C.

■ This court, in another type of case in 1964, disregarded the corporate entity, or pierced the corporate veil. In that case we quoted from Fletcher, Private Corporations, as follows:

"'* * * If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.' Fletcher, Private Corporations Sec. 41 (1963 rev. vol.)." Schriock v. Schriock, 128 N.W.2d 852, 866 (1964).

■ It is our view that the Board of Pharmacy properly saw through the corporate veil of Family Center Drug, and in so doing saw that actual control or responsibility for the operation of Family Center Drug was not in the owner of the majority of its stock, but was in the management of Red Owl and Snyder's Drug.

Family Center Drug attempts to raise the issue of the constitutionality of Subsection 5 of Section 43–15–35, N.D.C.C., for the first time on appeal.

It opens its discussion of this issue in its appellate brief as follows:

"Although not previously discussed, we would note that Section 43–15–35(5) of the North Dakota Century Code is subject to serious constitutional challenge insofar as said section requires the majority ownership of stock to be in a registered pharmacist when any pharmacy corporation seeks a permit."

In support of its position, it argues that the requirement that a majority of the stock of a corporation which makes application for a permit be owned by a registered pharmacist who is responsible for the operation of the pharmacy violates the basic constitutional right to pursue a calling or business, which is afforded to each and every citizen by the Constitution of the United States and the Constitution of the State of North Dakota.

■ In a decision of this court rendered only last year, we applied the rule that had been applied many times before by this court, that a question not raised or considered in the trial court cannot be raised for the first time on appeal. Odegaard v. Craig, 171 N.W.2d 133, Syllabus ¶ 3 (N.D. 1969).

■ Without deciding whether circumstances and conditions in some cases might

justify the nonapplication of that rule, we conclude that in this case there is no compelling reason why that rule should not be applied, and accordingly we apply it here. It is our view in support of that conclusion that if this constitutional issue is to be considered, it should be considered only after it has been adequately and properly briefed by both sides and after it has been submitted in the first instance to the trial court for its determination.

Because of our disposition of Issue No. 1, relating to the compliance with Section 43–15–35(5), we find it unnecessary to consider Issue No. 2, which involves the sufficiency of the evidence to support the Pharmacy Board's findings that Family Center Drug plans did not ensure effective control as a safeguard of public interest or public health.

For the reasons stated in this opinion, the order of the trial court is reversed, and the order of the North Dakota State Board of Pharmacy denying the application is affirmed.

TEIGEN, C. J., and PAULSON, KNUDSON and STRUTZ, JJ., concur.