2004 ND 166

**GRINNELL MUTUAL REINSURANCE COMPANY, Plaintiff and Appellee,**

v.

**Ole I. LYNNE, Defendant and Appellant.**

**Dena Karna, and Edward T. Larson, Defendants.**

No. 20030217.

Supreme Court of North Dakota.

Aug. 31, 2004.

Lawrence A. Dopson, Zuger Kirmis & Smith, Bismarck, for plaintiff and appellee.

Dennis Edward Johnson, Johnson & Sundeen, Watford City, for defendant and appellant Ole I. Lynne.

KAPSNER, Justice.

[¶ 1] Ole Lynne appeals from a summary judgment in a declaratory action commenced by Grinnell Mutual Reinsurance Company ("Grinnell") to resolve issues of policy coverage. The district court held Grinnell had no duty to defend or

indemnify Lynne under its commercial general liability policy. We affirm.

## I.

[¶ 2] Lynne is a farmer who engages in construction work during the winter months. Lynne orally contracted with Edward Larson to construct a new foundation for a farm house built on Larson's property in 1912. The process involved lifting the house from its foundation and supporting it with iron timbers while a new foundation was constructed under the house.

[¶ 3] Lynne drilled holes in the old foundation to accommodate four iron timbers to support the house while Lynne demolished the old foundation and constructed a new one. After Lynne removed the existing foundation and constructed footings, he hired a subcontractor, Dena Karna, to place concrete blocks on top of the footings. In the process of placing the blocks, either Lynne or Karna discovered the house would have to be raised another eight inches in order for the basement walls to be sufficiently accommodated. While Lynne was in the process of raising the house, the iron timbers "rolled over." The house fell off the support jacks and into the basement approximately three feet. Lynne claimed the house fell as a result of unusually high winds on the day of the incident. Grinnell argues the house fell as a result of Lynne's faulty workmanship, thus barring him from recovery under his insurance policy.

[¶ 4] Karna brought an action against Larson and Lynne to recover $8,385.95, money owed to him for work performed. After the house fell into the basement, Karna had to rebuild some of the damaged walls. Karna also modified the foundation to accommodate another house Larson purchased to be placed upon the foundation. Larson filed a cross-claim against Lynne, seeking to recover $35,000 in expenses allegedly incurred by Larson in connection with the removal and replacement of the house.

[¶ 5] At the time of the incident, Lynne had a commercial general liability policy with Grinnell. Lynne filed a claim against his policy seeking a defense of Karna's and Larson's lawsuits and indemnity for any damages. Grinnell denied coverage, but agreed to defend Lynne under a reservation of rights.

[¶ 6] Grinnell filed a complaint in a separate action seeking declaratory relief, claiming the commercial general liability policy does not cover the claims against Lynne by Larson or Karna because of the business risk exclusions in the policy. Grinnell argues the policy does not cover the losses incurred by Lynne because the damage to the house fits into one or more policy exclusions from coverage. Grinnell argues: business risk exclusions preclude coverage because the damage to the house was due to Lynne's incorrectly performing the work he had agreed to do; the house is excluded under the real property exclusion which provides that damage to real property upon which Lynne or a subcontractor was working is not covered by Lynne's policy. Originally, the district court granted summary judgment in favor of Grinnell on Larson's claim, but denied summary judgment as to Karna's claim because there was an issue of material fact as to whether Karna's work on the project was complete. Later, the district court granted summary judgment in favor of Grinnell on Karna's claim when it became clear through deposition testimony that Karna had not yet completed the project at the time the damage occurred.

[¶ 7] Lynne appeals to this Court.

## II.

[¶ 8] Grinnell's action for declaratory judgment was brought pursuant to N.D.C.C. § 32–23–06, which provides:

[T]he court shall render or enter a declaratory judgment or decree in an action brought by or against an insurance company to determine liability of the insurance company to the insured to defend, or duty to defend, although the insured's liability for the loss may not have been determined.

Grinnell moved for summary judgment in the declaratory action, and the district court granted summary judgment in favor of Grinnell based on the policy's exclusion from coverage.

[¶ 9] Summary judgment is a "procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result." *Hall Family Living Trust v. Mut. Serv. Life Ins. Co.*, 2001 ND 46, ¶ 6, 623 N.W.2d 32 (citing *Mandan Educ. Ass'n v. Mandan Pub. Sch. Dist.*, 2000 ND 92, ¶ 6, 610 N.W.2d 64). If the issues in the case are such that resolution of any factual dispute will not alter the result, then summary judgment is appropriate under the law. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599 (citing *Littlefield v. Union State Bank*, 500 N.W.2d 881, 883 (N.D.1993)). We review appeals from summary judgment de novo. *Weiss v. Collection Ctr., Inc.*, 2003 ND 128, ¶ 8, 667 N.W.2d 567.

[¶ 10] "The party opposing summary judgment cannot simply rely on factual assertions in a brief or pleadings and cannot rely on unsupported allegations; such conclusory assertions are insufficient to raise an issue of material fact." *Warner and Co. v. Solberg*, 2001 ND 156, ¶ 10, 634 N.W.2d 65 (citing *Jones v. Barnett*, 2000 ND 207, ¶ 5, 619 N.W.2d 490). This Court outlined the duty of a party opposing a summary judgment motion in *Anderson v. Meyer Broadcasting Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991) (internal citations omitted)):

Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

[¶ 11] Lynne argues a genuine issue of material fact exists sufficient to preclude summary judgment in favor of Grinnell. Lynne argues high winds contributed to the collapse of the house. *See Shelby Ins. Co. v. Northeast Structures, Inc.*, 767 A.2d 75, 77 (R.I.2001) (holding summary judgment authorizing insurance company not to provide a defense inappropriate where factual issue existed of whether an Act of God—high winds—

caused structure to collapse). In the lawsuit brought by Karna against Lynne, Lynne first alleged in his answer an "act of nature" was a superceding and intervening act which caused the house to collapse. In response to the cross-claim brought by Larson, Lynne alleged an "act of god" in the form of "clima[c]tic conditions, wind, and natural occurrences" was the cause of the damage. In his brief to the district court in opposition to Grinnell's motion for summary judgment, Lynne pointed to the page and line of Lynne's deposition testimony describing the wind. Lynne did not provide this reference in his brief to this Court.

[¶ 12] The only reference this Court is able to glean from the record is in Lynne's deposition. Lynne stated, "[i]t was a high wind and—I don't know. It was real windy that day. That's all I know. It was miserable out there." Lynne briefly mentions wind in his brief on page 4: "The day that Lynne went to raise the house the few inches needed to install the last layer of blocks, the wind was blowing strongly with gusts as it is well known to do in North Dakota." In his brief, Lynne concedes the wind may not have been the cause for damage to the house in his brief when he states, "Lynne had completed the lifting process when for some as yet unexplained reason, the house moved, the support timbers rolled and the house fell."

[¶ 13] Lynne acknowledges in his brief windy conditions are common in North Dakota. Lynne presented no evidence indicating the winds were different from those reasonably expected and for which a house mover in North Dakota ought to be prepared. When no pertinent evidence on an essential element of the claim is presented to the district court in opposing a motion for summary judgment, it is presumed no such evidence exists.

*Azure v. Belcourt Pub. Sch. Dist.*, 2004 ND 128, ¶ 8, 681 N.W.2d 816.

[¶ 14] Lynne does not direct this Court to the page and line number pointing out issues that support the conclusion that a genuine issue of material fact precludes summary judgment, nor does he argue them sufficiently to meet the non-moving party's burden to provide more than mere conclusory statements. We agree with the district court that Lynne failed to establish a genuine issue of material fact. We conclude Lynne failed to establish a genuine issue of material fact as to whether high winds caused the incident, rather than faulty contract performance of Lynne.

### III.

[¶ 15] Grinnell argues two exclusions apply to preclude coverage of Lynne's claim under the commercial general liability policy. The first is exclusion 2(j)(5) which states, "[t]his insurance does not apply to: . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." The second exclusion is 2(j)(6), which provides, "[t]his insurance does not apply to . . . [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Grinnell argues these provisions preclude coverage for Lynne's claim.

[¶ 16] Generally known as "business risk exclusions," the purpose of these provisions is to prevent policyholders from converting liability insurance into protection from foreseeable business risks. Jeffrey W. Stempel, *A Mixed Bag for Chicken Little: Analyzing Year 2000 Claims and Insurance Coverage*, 48 Emory L.J. 169, 236 (1999). Insurance companies theorize that a business risk, such as costs

resulting from improper performance of contract, should be built into the price of the product.

■ [¶ 17] Business risk exclusions are intended to provide coverage for tort liability, but not for contract liability of the insured for loss because the product or completed work was not that for which the other party had bargained. *See Bor–Son Bldg. Corp. v. Employers Commercial Union Ins. Co.*, 323 N.W.2d 58, 63 (Minn. 1982) (citing Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L.Rev. 415, 441 (1971)). The exclusions are meant to remove coverage for risks which are subject to manipulation by the insured or a third party. Lee R. Russ and Thomas F. Segalla, *Couch on Insurance*, § 129:1 (1997).

[¶ 18] In this case, Grinnell argues its commercial insurance policy is not meant to act as a warranty, and Lynne should be responsible for any damages resulting from the collapse and any resulting contract claims. A commercial liability insurance policy is not meant to act as a warranty of the insured's work. Rowland H. Long, *The Law of Liability Insurance*, § 10.05(8) (2004).

The exclusions from coverage for property damage contained in paragraphs j., m. and n. and other similar exclusions in the CGL policy are generally referred to as "business risk" exclusions, and are designed to exclude coverage for defective workmanship by the insured causing damage to the project itself. *Gary L. Shaw Builders v. State Auto. Mut. Ins. Co.*, 182 Ga.App. 220, 223 (355 S.E.2d 130) (1987); *Elrod's Custom Drapery Workshop v. Cincinnati Ins. Co.*, 187 Ga.App. 670 (371 S.E.2d 144) (1988). The principle behind such exclusions is based on the distinction made between two kinds of risk incurred by a contractor such as Donmac. The first is the business risk borne by the contractor to replace or repair defective work to make the building project conform to the agreed contractual requirements. This type of risk is not covered by the CGL policy, and the "business risk" exclusions in the policy make this clear. *Gary L. Shaw, supra* at 224, 355 S.E.2d 130. The second is the risk that the defective or faulty workmanship will cause injury to people or damage to other property. Because of the potentially limitless liability associated with this risk, it is the type for which CGL coverage is contemplated. *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 405 A.2d 788, 791 (1979). "While it may be true that the same neglectful craftsmanship can be the cause of both a business expense of repair and a loss represented by damage to persons and property, the two consequences are vastly different in relation to sharing the cost of such risks as a matter of insurance underwriting.... The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage [applicable under the CGL policy] is for tort liability for ... [injury to persons and damage to other property] and not for contractual liability of the insured for

economic loss because the product or completed work is not that for which the damaged person bargained. . . ."

*Glens Falls Ins. Co. v. Donmac Golf Shaping Co.*, 203 Ga.App. 508, 511, 417 S.E.2d 197, 200 (1992).

A.

[¶ 19] The district court concluded the insurance policy in this case was not ambiguous and exclusion 2(j)(5) precluded coverage for Lynne's claim. Lynne argues the district court erred in concluding the insurance policy was not ambiguous.

[¶ 20] This issue turns on the interpretation of the insurance policy issued by Grinnell to Lynne. Whether an insurance contract is ambiguous is generally a question of law. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶ 5, 579 N.W.2d 599 (citing *Sellie v. North Dakota Ins. Guar. Ass'n*, 494 N.W.2d 151 (N.D.1992)). This Court independently examines and construes the insurance policy to determine if the district court erred in its construction. *Fisher*, at ¶ 5. Interpretation of an insurance policy is fully reviewable on appeal and is a question of law for a court to decide. *Id.* "An ambiguity exists when good arguments can be made for two contrary positions about the meaning of a term in a document." *Id.*

[¶ 21] Lynne attempts to defeat application of the exclusions with a number of arguments that dissect the policy provisions. Lynne's first argument is that the policy provisions excluding coverage for Lynne's claim are ambiguous and thus, must be construed against the insurer. In *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omitted), this Court summarized our standards for construing an insurance policy:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

We construe ambiguous contract provisions narrowly; however, this case fits within even a narrow interpretation of the business risk exclusion.

[¶ 22] "Exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer." *Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 10, 658 N.W.2d 363 (citing *Western Nat'l Mut. Ins. Co. v. Univ. of North Dakota*, 2002 ND 63, ¶ 7, 643 N.W.2d 4). Although this Court may construe an exclusionary provision strictly, we do not automatically construe every insurance exclusion provision against an insurer and in favor of coverage for the insured. *Nationwide Mut. Ins. Companies v. Lagodinski*, 2004 ND 147, ¶ 9, 683 N.W.2d 903.

[¶ 23] Initially, the district court granted summary judgment holding exclusion 2(j)(5) applied and Grinnell had no duty to defend or indemnify Lynne for the claims

of Larson. The district court did not initially grant summary judgment on the Karna claim because "an *exception* to Exclusion 2j.(6) *may* provide coverage in behalf of Lynne for damage to the block work performed by Karna—*if* Karna's work on this project was *completed* when the house fell into the basement, which would be an unresolved question of material fact." The exception to exclusion 2(j)(6) provides, "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" Grinnell resubmitted its motion for summary judgment directing the district court to the deposition testimony of Karna. The district court then granted summary judgment in favor of Grinnell, stating "[b]ased upon the deposition testimony of Karna—the accuracy of which has not been called into question by Lynne—it is apparent to the Court that all of the work called for in his contract with Lynne had *not* been completed at the time the house fell into the basement.... Accordingly, the Court finds that the exception to Exclusion 2j.6 does *not* operate so as to provide coverage in behalf of Lynne for the claim submitted by Karna."

[¶ 24] Applying the language of the policy exclusions, the district court examined the causes of actions asserted by Larson and Karna against Lynne in the underlying lawsuit. While acknowledging allegations of negligence, the court stated it was necessary to determine that the claims "are not in reality *contract claims cloaked as tort claims*" (citing *Jerry Davis, Inc. v. Maryland Ins. Co.*, 38 F.Supp.2d 387 (E.D.Pa.1999)). The district court determined "it is undisputed that the damages to Larson's house came about as Lynne was in the process of performing *contractual* obligations (i.e., to temporarily raise the house, install a new basement and lower the house onto the

new basement) owed to Larson." In its decision the district court explained:

> In summary, the Court believes that it is on solid ground in awarding summary judgment in favor of Grinnell Mutual based upon the applicability of Exclusion 2j.(5), Section IA, of the CGLP [commercial general liability policy] which Grinnell Mutual issued to Lynne. That exclusion clearly states that no coverage is provided under the CGLP for "property damage" to "that particular part of real property on which you (i.e., Lynne) or any contractors or subcontractors (i.e., Karna) working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." Reasonable persons could not disagree that at the time of the loss: 1. Lynne was performing operations; 2. on real property (owned by Larson); and, 3. damage (to the property) arose out of those operations.

[¶ 25] The language of the policy indicates "[t]hat particular part of real property" on which Lynne was working is subject to the exclusion. The particular part of real property on which Lynne was working was the house. Thus, damage to the house resulting from Lynne's work will not be covered by the policy due to the exclusions included in the policy. In *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, 579 N.W.2d 599, we held exclusion 2(j)(5) ambiguous and construed it against the insurer. Our holding in that action dealt with whether damages had to occur while work was still in progress. We concluded "exclusion j(5) excludes coverage only for property damage during the time Kensok worked upon the property." *Id.* at ¶ 10. The ambiguity discussed by this Court in *Fisher* does not affect the result here because neither Lynne nor Karna had completed the work on the building. We conclude the exclusion under

2(j)(5) of the policy operates to preclude coverage for Lynne's claim for defense and indemnity against Larson's claim for damage to his house.

## B.

[¶ 26] Lynne argues the damage to the house did not "arise out of" Lynne's work and contract performance. In the alternative, Lynne argues the term "arises out of" is ambiguous and should be construed against Grinnell. We disagree.

[¶ 27] Citing *Grinnell Mut. Reinsurance Co. v. Center Mut. Ins. Co.*, 2003 ND 50, ¶ 12, 658 N.W.2d 363, Lynne argues under North Dakota law, if the accident was caused by an independent or intervening act, then it did not "arise out of" Lynne's operations. In this case, Lynne argues the intervening act was high winds. As discussed above, Lynne failed to adequately meet his burden under summary judgment standards that a genuine issue of material fact existed to demonstrate an independent or intervening act was the cause of the damage to the house. Absent a demonstration, sufficient to raise an issue of fact of an independent or intervening cause of the damage, Lynne's operations on the house were a direct cause of the resulting damage.

[¶ 28] In *Grinnell*, we discussed the causal connection test established in *Norgaard v. Nodak Mut. Ins. Co.*, 201 N.W.2d 871, 874 (N.D.1972). *Norgaard* involved an accidental shooting of an individual due to the unintentional discharge of a gun while the gun rested on the roof of a parked automobile. *Id.* The owner of the vehicle sued his automobile insurance company seeking indemnification. *Id.* This Court affirmed the district court's ruling that the accidental shooting did not arise out of the ownership, use, or maintenance of the vehicle and denied coverage. *Id.* at 872. In *Norgaard*, we held that the "caus-

al relationship need not constitute a proximate cause, but on the other hand if an injury is directly caused by some independent or intervening cause it does not arise out of the use of an automobile." *Id.* at 875. The resulting liability must arise out of the "inherent nature" of the insured item. *Id.* at 874.

[¶ 29] Lynne's operation was to lift the house from its foundation, tear out and replace the existing foundation, and place the house on a new foundation. The day on which the damage to the house occurred, Lynne was in the process of lifting the house for a second time. During this lift, the timbers supporting the house rolled over and the house subsequently fell into the basement. These facts are sufficient to meet the causal connection test because the damage to the house could not have occurred without Lynne's act of raising the house. *See also Houser v. Gilbert*, 389 N.W.2d 626, 627 (N.D.1986) (concluding the causal relationship test was fulfilled when mud from trucks caused another driver to lose control).

[¶ 30] We are not persuaded that no causal relationship exists between the nature of the work performed by Lynne and the resulting damage to the house. We conclude, as a matter of law, the damage to the house arose out of the inherent nature of the work performed by Lynne.

## C.

[¶ 31] Next, Lynne argues the house is not real property and therefore, exclusion 2(j)(5) does not apply because it states in part, "[t]his insurance does not apply to: . . . '[p]roperty damage' to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

Lynne argues that particular part of real property on which he was working was not the house, but rather the foundation of the house; therefore, any damage to the house should be covered under the terms of the policy, because the exclusion only applies to real property. We find this argument unpersuasive.

[¶ 32] The district court found Lynne was performing operations on real property owned by Larson and the damage to the property arose out of operations by Lynne. The record reflects Lynne was to raise the house off its foundation so the foundation could be rebuilt.

[¶ 33] In his brief, Lynne devotes one paragraph to the argument that his work was directed only at the basement and foundation, not to the house proper. Lynne offered no case law or other authority to support this position. We deem issues not adequately briefed or argued on appeal to be waived. *Snyder v. N.D. Workers Comp. Bur.*, 2001 ND 38, ¶ 20, 622 N.W.2d 712 (citing *First State Bank v. Moen Enterprises*, 529 N.W.2d 887, 893 (N.D.1995)). "Without citations to relevant authority or supportive reasoning, an argument is assumed to be without merit." *Snyder*, at ¶ 20 (citing *Friedt v. Moseanko*, 484 N.W.2d 861, 863 (N.D. 1992)).

[¶ 34] We conclude Lynne did, in fact, perform work on the house and the house was "[t]hat particular part of real property" upon which Lynne directly performed operations.

### D.

[¶ 35] The next argument offered by Lynne to defeat application of the exclusion is that the house is not real property, but rather, is personal property because the house was not attached to the foundation at the time of the damage. We disagree.

[¶ 36] In North Dakota, whether an item is a fixture or personal property is defined by statute:

A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines, or shrubs, or imbedded in it, as in the case of walls, or permanently resting upon it, as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws.

N.D.C.C. § 47–01–05.

[¶ 37] This Court has previously applied a three-part test to determine whether an object is a fixture or personal property. *Strobel v. Northwest G.F. Mut. Ins. Co.*, 152 N.W.2d 794, 796 (N.D.1967). In determining whether an object has become a fixture under the statute, the *Strobel* Court held, "the court will look to the intention of the person making the annexation, the manner in which the building is annexed, and its adaptation to the use of the realty." *Id.*

[¶ 38] In this case, the intention of the person using the realty, Larson, is key to determining whether the house was a fixture or personal property. The house was located on the original foundation since 1912 and only removed for purposes of replacing the foundation. Nothing in the record indicates Larson intended to move the house from its location once the foundation was complete. Furthermore, the manner in which the building was annexed indicates its nature as a fixture. The building was temporarily placed upon timbers in order to raise it to the level necessary to complete the basement, and for part of that time, Larson's family lived in the house and only moved when the plumbing and electrical work had to be disconnected. Finally, the adaptation of the house to the environment demon-

strates its permanent nature. The very purpose of rebuilding the foundation of the house was to ensure the house's permanent status on Larson's property.

[¶ 39] The house is a fixture and not personal property, because the actions of the owner manifest an intention to have the house remain on the property permanently. We conclude the house is real property within the scope of the exclusion.

## IV.

[¶ 40] The next issue raised by Lynne is whether the policy exclusions preclude coverage for damage to work performed by Karna, a subcontractor. The essence of this issue is whether the policy issued to Lynne covers the claim by Karna from the destruction of his work on the basement walls resulting from the house falling. Grinnell argues both exclusions, 2(j)(5) and 2(j)(6), operate to preclude Karna's claim.

[¶ 41] Karna sought damages for work performed on the basement. Part of his claim relates to his initial efforts on the basement and is unrelated to the house falling. The remainder of the claim is extra work performed by Karna to accommodate a different house purchased by Larson and placed upon the foundation. Lynne argues his policy should cover Karna's claim.

[¶ 42] The district court initially determined a genuine issue of material fact existed as to whether Karna's work was complete on the project, and subject to an exception to exclusion 2(j)(6). An exception to exclusion 2(j)(6) from the policy's broad coverage provides coverage for property damage included in the products-completed operations hazard. *Fisher v. American Family Mut. Ins. Co.*, 1998 ND 109, ¶¶ 12–13, 579 N.W.2d 599. The exception to the exclusion states, "[p]aragraph (6) of this exclusion does not apply to 'property damage' included in the 'prod-

ucts-completed operations hazard.'" The district court indicated our decisions construing the exception to exclusion 2(j)(6) may have provided coverage for damage to the block work performed by Karna, if Karna's work on the project was completed when the house fell into the basement. The submission of deposition testimony by Karna, the accuracy of which is not contested by Lynne, revealed the work was not complete, and the district court properly concluded the damage to Karna's work was not covered by the terms of the policy because the claim arose from a contract dispute.

[¶ 43] Although the district court examined the possibility that the exception of exclusion 2(j)(6) may have provided coverage for Karna's claim, the district court did not otherwise rely on exclusion 2(j)(6) in granting summary judgment in favor of Grinnell. "In this case, because no determination has yet been made as to whether Lynne's work on Larson's house was 'incorrectly performed', and because reasonable persons could differ as to whether this is the case, any award of summary judgment in favor of Grinnell Mutual cannot be based upon the asserted applicability of Exclusion 2j.(6) of the CGLP." The trial court relied only on exclusion 2(j)(5).

[¶ 44] The plain language of the policy exclusion 2(j)(5), even if narrowly construed against the insurer, operates to preclude coverage for Karna's claim. The purpose of the business risk exclusion in a contractor's general liability policy is to preclude coverage for claims arising out of contract, rather than tort. The district court properly characterized Karna's claim as part of the contractual obligation of Lynne to Larson, rather than a tort claim. As previously discussed, a policy's business risk exclusions, such as those present in this case, do not provide coverage for

breach of contract. The district court did not err when it concluded coverage for Karna's claim was precluded by the language of the policy.

## V.

[¶ 45] Lynne directs our attention to the recent Minnesota case, *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877 (Minn.2002), holding language found in exclusions 2j(5) and 2j(6), the same exclusions at issue here, was ambiguous and determining the commercial general liability policy provided coverage for a claim for damages. *Thommes* is not helpful, however. The ambiguity at issue in *Thommes* was whether the phrases "that particular part of real property" or the word "operations" could be read to exclude coverage for a claim that arose because a contractor improperly cleared trees and plants on the property of an adjoining landowner who had not contracted for such removal. There are no facts giving rise to a similar ambiguity here. Lynne's actions were taken pursuant to a contractual arrangement with Larson and all work was done on Larson's property.

## VI.

[¶ 46] We affirm the district court's summary judgment in favor of Grinnell.

[¶ 47] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM and WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, specially concurring.

[¶ 48] I respectfully specially concur. I agree that Lynne has not raised a genuine question of material fact to avoid summary judgment. If, however, an act of God was a proximate cause of the loss, then in my opinion, there was an "occurrence" within the meaning of the policy.

[¶ 49] Under the policy in the present case, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Other jurisdictions have recognized that the term "accident" in insurance policies includes damage caused by acts of God. 57A Am.Jur.2d *Negligence* § 42 (1989); *see Royal Indemnity Co. v. McClatchey*, 101 Ga.App. 507, 114 S.E.2d 394, 397 (1960); *see also Dempsey v. City of Souris*, 279 N.W.2d 418, 420 (N.D.1979). Under Section I, COVERAGE A(1.), the Grinnell policy in the instant case states:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

b. This insurance applies to "bodily injury" and "property damage" only if: (1) the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

Our Court has stated that "[i]f an act of God and the negligence of the defendant combine to produce the injury, the defendant is liable." *Lang v. Wonnenberg*, 455 N.W.2d 832, 836 (N.D.1990) (citation omitted). Therefore, not only is there a duty to defend the insured under the Grinnell policy, but arguably, there is a duty to indemnify. Our Court has held: "The efficient proximate cause doctrine is generally recognized as the universal method for resolving coverage issues involving the concurrence of covered and excluded perils" and has concluded North Dakota had adopted it statutorily. *Western Nat'l Mut. Ins. Co. v. Univ. of N.D.*, 2002 ND 63, ¶ 17, 643 N.W.2d 4. The efficient proximate cause "is considered the predominating cause of the loss." *Id.* at ¶ 32.

[¶ 50] I do not believe that exclusion 2j(5) would apply under these circum-

stances, because any damage caused by the act of God did not arise out of the insured's operations. The act of God is an independent cause of the damage. In discussing the meaning of the words "arising out of" the use of a motor vehicle in an automobile policy, our Court stated:

> In determining the meaning of the phrase "arising out of," courts have recognized that the causal relationship need not constitute a proximate cause, but on the other hand if an injury is directly caused by some independent or intervening cause it does not arise out of the use of an automobile, notwithstanding there may have been some remote connection between the use of an automobile and the injury complained of.

*Norgaard v. Nodak Mut. Ins. Co.*, 201 N.W.2d 871, 875 (N.D.1972).

[¶ 51] In *Shelby Ins. Co. v. Northeast Structures, Inc.*, 767 A.2d 75 (R.I.2001), a wood framed indoor arena and stable collapsed during a storm. *Id.* at 75–76. The insurance company that insured the builder, Northeast Structures, filed a declaratory judgment, seeking to establish it did not have a duty to indemnify or defend the builder under the commercial general liability insurance contract. *Id.* at 76. The builder claimed the damage was the result of a storm and high winds or an "Act of God." *Id.* The Supreme Court of Rhode Island reversed the grant of summary judgment to the insurance company, holding that the builder's defense raised the possibility that the collapse was the result of an "Act of God" rather than faulty work. *Id.* at 77. It concluded that a question of fact existed with respect to the cause of the collapse and that if the cause of the collapse was an "Act of God," the insurance company would have a duty to defend and indemnify the builder. *Id.* at 76.

[¶ 52] Lynne raised as an affirmative defense "an act of nature" occurred which caused the house to roll off the jacks. North Dakota recognizes the affirmative defense of "Act of God." *Huber v. Oliver County*, 1999 ND 220, 602 N.W.2d 710. However, in order to prevail on the act-of-God defense at trial, Lynne would need to establish by a preponderance of the evidence that the winds "(1) were unprecedented and extraordinary; (2) could not have been reasonably anticipated; (3) could not have been reasonably provided against; and (4) were the sole proximate cause of the damage to the ... property." *Lang*, 455 N.W.2d at 836 (citation omitted). Whether a loss is occasioned by an act of God is ordinarily a question of fact. *Id.* In order to successfully resist Grinnell's motion for summary judgment, Lynne must have presented competent admissible evidence which would raise a genuine issue of material fact that the winds were extraordinary, unexpected, could not have been provided against, and were a proximate cause of the damage. Lynne has failed to do so.

[¶ 53] I, therefore, respectfully specially concur.

[¶ 54]WILLIAM A. NEUMANN, JJ., concur.