2003 ND 128

**Duffy R. WEISS and Shawtee Weiss,
Plaintiffs and Appellants**

v.

**COLLECTION CENTER, INC., and
Medcenter One—Q & R Clinic,
Defendants and Appellees**

and

**John and Mary Doe, Defendants.**

No. 20020327.

Supreme Court of North Dakota.

Aug. 20, 2003.

John J. Gosbee, Gosbee Law Firm, Mandan, for plaintiffs and appellants.

Michael L. Wagner, Wagner Law Firm, Bismarck, for defendant and appellee Collection Center, Inc.

Timothy D. Lervick, Schulz Lervick Geiermann & Bergeson Law Offices, Bismarck, for defendant and appellee Medcenter One.

VANDE WALLE, Chief Justice.

[¶ 1] Duffy and Shawtee Weiss appealed from a summary judgment which dismissed their claims against Collection Center, Inc. ("CCI") and John and Mary Doe as unidentified representatives of CCI for violations of the Fair Debt Collection Practices Act (the "Act") and which dismissed their claims against CCI, the Does, and Medcenter One—Q & R Clinic ("Medcenter") for intentional and negligent infliction of emotional distress. We conclude the Weisses have raised genuine issues of material fact about their claim, but summary judgment was properly granted on their other claims. Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

# I

[¶ 2] Shawtee Weiss received medical treatment at Medcenter, and as a result, the Weisses had a $255 outstanding account balance. In October 2001, Medcenter assigned the Weisses' unpaid account to CCI for collection. By affidavit, CCI president Bryan Dvirnak explained CCI's collection procedures. When an account is "turned over" to CCI, the account enters a "pre-collect" stage. CCI sends one to three letters to the debtor requesting payment during this stage, and no other debt collection efforts are employed. If the debtor fails to pay during pre-collect, the account then proceeds to "full-collection." At this stage, a letter is sent notifying the debtor his account is in full-collection, and a CCI representative usually calls the debtor. CCI mailed three letters to the Weisses, dated October 29, November 12, and November 27, which directly requested they pay the $255 bill. The first two letters were labeled pre-collect. On December 3, an employee of CCI called the Weisses at home regarding their bill. Shawtee Weiss ended the conversation by hanging up the phone.

[¶ 3] During full-collection, CCI also makes efforts to determine the debtor's assets, in case a judgment is obtained. These efforts include sending "vehicle inquiry letters" to the North Dakota Department of Motor Vehicles ("DMV") to request information on the debtor's vehicles and requesting UCC searches and credit reports. Debtors are not informed when CCI requests UCC searches or credit reports. In contrast, Dvirnak explained CCI's policy was to send letters to debtors informing them CCI had made an inquiry about their vehicles. A group of vehicle inquiry letters are sent to the DMV once a week, and the corresponding letters to debtors are mailed on various days of the

week. Thus, under CCI's system, the letter to the DMV and the corresponding letter to the debtor should be sent less than a week apart.

[¶ 4] The Weisses received a fourth letter ("vehicle letter") informing them CCI had requested information about their vehicles on December 7. The letter stated:

GREETINGS:

PLEASE LET THIS LETTER SERVE AS ACKNOWLEDGMENT THAT OUR AGENCY HAS REQUESTED INFORMATION AND MADE AN INQUIRY TO THE MOTOR VEHICLE DEPARTMENT, REGARDING YOUR MOTOR VEHICLE(S).

SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS CORRESPONDENCE, PLEASE CALL YOUR ACCOUNT REPRESENTATIVE AT....

YOURS VERY TRULY,

COLLECTION CENTER INC.

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.[1]

[¶ 5] However, the DMV apparently never received CCI's vehicle inquiry letter requesting information about the Weisses' vehicles. Dvirnak explained:

CCI sent a batch of vehicle inquiry letters to the DMV and also sent out vehicle information letters to debtors notifying them that an inquiry had been made with the DMV. To the best of my knowledge, the DMV has not received the batch of letters which included the Weiss letter. I am not aware of why the vehicle inquiry letter did not arrive at the DMV. If CCI failed to send the

---

**1.** The Act requires that collection notices con-   tain this statement. 15 U.S.C. § 1692e(11).

vehicle inquiry letters to the DMV on December 7, 2001, such a mistake was inadvertent and unintentional, because CCI's process of sending letters is computerized. CCI fully intended to send the vehicle [inquiry] letters to the DMV on December 7, 2001.

[¶ 6] The Weisses allege CCI's attempts to collect the $255 debt violated the Act. They sought certification of the case as a class action on the claims. The Weisses also claimed CCI, its representatives, and Medcenter were liable for negligent and intentional infliction of emotional distress. CCI moved for summary judgment on all counts of the complaint, and Medcenter joined CCI's motion. The trial court allowed additional time for CCI to complete the Weisses' discovery requests and for the Weisses to present additional information by affidavit to the court in response to CCI's summary judgment motion. Thereafter, the trial court granted CCI's motion for summary judgment.

[¶ 7] On appeal, the Weisses argue CCI, through the vehicle letter, implicitly threatened to repossess the Weisses' vehicle in violation of the Act. The Weisses also contend CCI's collection efforts on behalf of Medcenter constitute intentional infliction of emotional distress.

## II

■ [¶ 8] Summary judgment is a procedural device which promptly resolves an action on the merits without a trial if the evidence shows either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or if resolving the factual disputes will not change the result. *Hoffner v. Johnson*, 2003 ND 79, ¶ 5, 660 N.W.2d 909. If reasonable persons could reach only one conclusion from the facts, issues of fact may become issues

of law. *Fetch v. Quam*, 2001 ND 48, ¶ 8, 623 N.W.2d 357. "Even undisputed facts do not justify summary judgment if reasonable differences of opinion exist as to the inferences to be drawn from those facts." *Meide v. Stenehjem*, 2002 ND 128, ¶ 6, 649 N.W.2d 532. When reviewing a summary judgment, this Court views the evidence in the light most favorable to the non-moving party and gives that party the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Hoffner*, at ¶ 5. We review de novo the question of law whether the trial court properly granted summary judgment. *Id.*

## III

### A

[¶ 9] In 1977 Congress enacted the Fair Debt Collection Practices Act for the purpose of eliminating abusive, deceptive, and unfair debt collection practices. 15 U.S.C. § 1692. The Act defines multiple terms, and for the purposes of this opinion, we assume the Weisses are "consumers," CCI is a "debt collector," and the money owed to Medcenter is a "debt," as those terms are defined by the Act. 15 U.S.C. § 1692a.

■ [¶ 10] Under the Fair Debt Collection Practices Act an action may be brought "in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Thus, an action for unfair debt collection practices under the Act may be maintained in either state or federal court. *See, e.g., Itri v. Equibank, N.A.*, 318 Pa.Super. 268, 464 A.2d 1336, 1342–43 (1983). *Cf. Kristensen v. Strinden*, 343 N.W.2d 67, 69–71 (N.D. 1983) (noting North Dakota courts are vested with concurrent jurisdiction in ac-

tions under 42 U.S.C. § 1983 and the State Constitution does not permit State courts any discretion in determining whether or not to entertain actions properly brought before them).

[¶ 11] The Act bars using any false, deceptive, or misleading representations or means to collect a debt. 15 U.S.C. § 1692e (providing a nonexclusive list of sixteen practices which violate the Act). The most widely used test to determine whether a collection letter violates § 1692e is the objective "least-sophisticated-consumer standard." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993); *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir.1996) ("The Act is aimed at protecting consumers in general from abusive debt collection practices and the test is how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives."). *But see Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir.1994) (stating the Seventh Circuit will apply an "unsophisticated consumer" standard).

■ [¶ 12] The least-sophisticated-consumer standard is more rigorous than determining whether a "reasonable consumer" would find a debt collector's communications false, deceptive, or misleading. *Dutton v. Wolhar*, 809 F.Supp. 1130, 1136 (D.Del.1992); *see also Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir.1996) (finding "a violation of Section 1692e if [the debt collector's] letter and telephone call are likely to deceive or mislead a hypothetical 'least sophisticated debtor'"). However, courts apply this standard in a way which protects debt collectors from unreasonable misinterpretations of collection notices. *Clomon*, 988 F.2d at 1319 ("emphasiz[ing]

that in crafting a norm that protects the naive and the credulous ... courts have carefully preserved the concept of reasonableness"). Following the majority of other courts, we evaluate the Weisses' claims using the least-sophisticated-consumer standard.

[¶ 13] The Weisses claim the vehicle letter they received violates 15 U.S.C. § 1692e(4), which prohibits:

The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

[¶ 14] To demonstrate a § 1692e(4) violation, the Weisses must show (1) CCI represented or implied nonpayment of their debt would result in one of the above actions and (2) CCI could not lawfully take such action or did not intend to do so.

[¶ 15] First, we examine the Weisses' contention that the least sophisticated consumer would interpret the vehicle letter as an implicit threat to seize their vehicle. CCI analogizes the vehicle letter to a letter from a collection agency to a debtor in *Wade v. Regional Credit Ass'n*, 87 F.3d 1098 (9th Cir.1996). The letter in *Wade* stated, in part: "WHY HAVEN'T WE HEARD FROM YOU? OUR RECORDS STILL SHOW THIS AMOUNT OWING. If not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT YOUR CREDIT REPUTATION. SEND PAYMENT TODAY." *Id.* at 1099. The Ninth Circuit considered whether the letter violated the Act by "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken," because the debt collectors did not have a license to collect debts in the debtor's state of residence. *Id.* at 1100

(quoting 15 U.S.C. § 1692e(5)). The court held the letter was not a threat to take action that could not legally be taken and concluded the letter was informational, stating "[t]he least sophisticated debtor would construe the notice as a prudential reminder, not as a threat to take action." *Id.*

■ [¶ 16] CCI contends the vehicle letter is also a "for your information" letter and even the least sophisticated consumer would not regard the letter as an implicit threat that nonpayment would result in any action. Other courts have rejected similar "just stating the facts" arguments because the debt collectors were "not simply intending to provide a public service to the recipients of its notices." *See, e.g., Gradisher v. Check Enforcement Unit, Inc.,* 210 F.Supp.2d 907, 917 n. 3 (W.D.Mich.2002). The letter in this case stated CCI had "requested information and made an inquiry to the motor vehicle department, regarding your motor vehicle(s)." (capitalized in the original). We are unwilling to conclude as a matter of law that a hypothetical least sophisticated consumer could not interpret CCI's letter as an implied threat to seize the Weisses' vehicle, if the debt remained unpaid.

[¶ 17] As previously noted, 15 U.S.C. § 1692e(4) does not prohibit a debt collector from implying that failure to pay a debt will result in the seizure of an individual's property if "such action is lawful and the debt collector or creditor intends to take such action." Thus, the Weisses must show that CCI could not lawfully seize their vehicle or had no intention to do so. The Weisses first argue CCI had no legal right to collect on a small debt by seizing a vehicle. We reject this argument and the reasoning that CCI would not take such action to collect such a small sum. There is no legal prohibition to taking action to collect a small debt, and a collection agen-

cy may specifically pursue a small debt, not for the money involved but to deter others from believing they can default on small debts without consequence.

■ [¶ 18] The Weisses also raise the issue of whether CCI intended to follow through on its implicit threat to seize their vehicle. This issue further distinguishes this case from *Wade;* here, we do not consider whether CCI legally *could* take the action allegedly implied by its letter, but whether CCI *intended* to take such action. *See, e.g., United States v. Nat'l Fin. Servs., Inc.,* 98 F.3d 131, 137–38 (4th Cir.1996) (finding 15 U.S.C. § 1692e(5) was violated when a reasonable and least sophisticated debtor would read collection letters as threatening legal action, which debt collector did not intend to take); *Irwin v. Mascott,* 112 F.Supp.2d 937, 953 (N.D.Cal.2000) (holding debt collector violated § 1692e(4) by sending letters threatening post-judgment remedies which it did not intend to seek because its "empty threats [were] issued in an attempt to extract money"); *Van Westrienen v. Americontinental Collection Corp.,* 94 F.Supp.2d 1087, 1102 (D.Or.2000) (stating "[e]ven if defendants made a [§ 1692e(4)] misrepresentation from the point of view of the 'least sophisticated debtor,' the central issue is whether defendants intended to do what plaintiffs feared").

[¶ 19] The facts demonstrate the DMV apparently never received the corresponding vehicle inquiry letter to the Weisses' vehicle letter. CCI contends a mistake occurred and correctly notes debt collectors are protected from liability under the Act "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The Weisses further question

whether CCI has ever levied upon a vehicle or intended to do so. In response to the Weisses' discovery requests, CCI stated it sent 160 vehicle inquiry letters to the DMV. However, it did not have records as to how many vehicles it had levied upon. Furthermore, the Weisses contend CCI's pattern of sending debtors letters informing them about the DMV inquiries evidences a pattern to frighten debtors into paying. The Weisses reason that CCI does not send similar letters notifying debtors it has requested UCC searches or credit reports because many debtors would be unaware of the implications of such requests.

[¶ 20] We conclude the letter, when considered with these facts, raises questions regarding CCI's intent. Whether or not the vehicle letter violated 15 U.S.C. § 1692e(4) is a question of fact for the fact finder to decide. We reverse the summary judgment and remand for trial to determine whether CCI violated the Act.

### B

[¶ 21] The Weisses also argue the trial court erred in granting summary judgment on their claim for intentional infliction of emotional distress against CCI and its representatives. Emotional distress damages have been held compensable as actual damages in Fair Debt Collection Practices Act actions. *See, e.g., Teng v. Metropolitan Retail Recovery*, 851 F.Supp. 61, 68–69 (E.D.N.Y.1994). In North Dakota, we have stated a cause of action for intentional infliction of emotional distress requires proof of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." *Muchow v. Lindblad*, 435 N.W.2d 918, 923–24 (N.D.1989) (citing Restatement (Second) of Torts § 46 (1965)). Liability is narrowly limited to extreme and outrageous conduct:

It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Id.* at 924 (quoting Restatement (Second) of Torts § 46 (1965)). *See also Hougum v. Valley Mem. Homes*, 1998 ND 24, ¶ 26, 574 N.W.2d 812.

[¶ 22] Over a period of three months, CCI contacted the Weisses four times by letter and once on the telephone; the record contains copies of these letters and a tape of the telephone call. Shawtee stated the vehicle letter, in particular, "scared" and "upset" her because she was afraid CCI might take their vehicles, causing Duffy to lose his job. After reviewing the record and viewing the evidence in the

light most favorable to the Weisses, we conclude reasonable persons could not find the conduct of CCI approached "extreme and outrageous conduct." *Compare Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 650 P.2d 496, 500 (Ct.App.1982) (concluding collection agency was not liable for intentional infliction of emotional distress when it called debtor six times over three months and did not use language considered utterly intolerable in a civilized society, and debtor testified the calls upset her, made her cry, and caused her to lose sleep) *and In re Baker,* 18 B.R. 243, 245–46 (Bankr.W.D.N.Y.1982) (dismissing debtor's counterclaim against bank for emotional distress after concluding the mailing of numerous letters and notices, telephoning debtor over 100 times, and making two personal visits was not outrageous, atrocious, or indecent conduct) *with Margita v. Diamond Mortg. Corp.,* 159 Mich.App. 181, 406 N.W.2d 268, 272 (1987) (concluding summary judgment was inappropriate on debtors' intentional infliction of emotional distress claim when for two years a mortgage company continually attempted to collect a debt that was never overdue through abusive telephone calls, letters charging late fees, and threats of foreclosure). Thus, summary judgment was proper on the Weisses' intentional infliction of emotional distress claim against CCI.

## C

[¶ 23] The Weisses also contend Medcenter, because of CCI's conduct, should be liable for intentional inflection of emotional distress. However, the record does not reflect that Medcenter engaged in any independent action, nor is there evidence in the record that Medcenter condoned or had knowledge of CCI engaging in collection practices prohibited by the Act. Thus, the Weisses' claim against Medcenter for intentional infliction of emotional distress

depends on CCI's liability. Because we have affirmed summary judgment for CCI on this issue, we affirm the summary judgment for Medcenter as well.

## D

[¶ 24] Under N.D.R.App.P. 38, CCI and Medcenter have both requested costs and attorney fees, contending the Weisses' appeal is frivolous. "An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which could be seen as evidence of bad faith." *Larson v. Larson,* 2002 ND 196, ¶ 13, 653 N.W.2d 869. For the reasons discussed above, the appeal is not frivolous, and we deny the requests for costs and attorney fees under N.D.R.App.P. 38.

## IV

[¶ 25] We reverse the summary judgment dismissing the Weisses' claims under the Fair Debt Collection Practices Act against CCI and its representatives and remand for trial. We affirm the summary judgment on all other claims.

[¶ 26] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.