2012 ND 63

Sean **WEEKS**, Plaintiff and Appellant

v.

Michael J. **GEIERMANN** and Collection Center, Inc., Defendants and Appellees.

No. 20110156.

Supreme Court of North Dakota.

March 21, 2012.

John J. Gosbee, Fort Yates, N.D., for plaintiff and appellant.

Christopher Ralph Morris, Minneapolis, MN, for defendant and appellee Collection Center, Inc.

James S. Hill (argued) and Kara J. Johnson (appeared), Bismarck, N.D., for defendant and appellee Michael J. Geiermann.

MARING, Justice.

[¶1] Sean Weeks appeals from a summary judgment dismissing his claims against Michael Geiermann and Collection Center, Inc. (collectively "Collection Center"), for violations of the Fair Debt Collection Practices Act. We affirm, concluding that a "medical services provider," who does not make disclosures required under N.D.C.C. § 13–01–15 to charge the "late payment charge" allowed under N.D.C.C. § 13–01–14.1, is still entitled to prejudgment interest under N.D.C.C. § 47–14–05 at the legal rate of six percent per annum.

I

[¶2] In 2009, Weeks brought this action against Collection Center alleging violations under the Fair Debt Collection Practices Act ("the Act"), 15 U.S.C. § 1692, for its attempt to collect $3,034.21 in interest on a debt Weeks owed to Medcenter One for clinic and hospital services. Weeks obtained medical services from Medcenter's clinic and hospital. According to billing records for the clinic, Weeks received services between 2002 and 2008 and was billed $6,752.46, of which his insurance paid $4,698.72. After an insurance adjustment of $1,427.26, Weeks was responsible for $626.48. Weeks paid $453.40, and after another adjustment of $2.03, $171.05 remained unpaid. In July 2009, attorney Geiermann on behalf of Collection Center sent Weeks a letter, demanding payment to the hospital for $4,481.22 and to the clinic for $171.05. The letter also demanded $3,003.28 in interest for the hospital and $30.93 in interest for the clinic.

[¶3] Weeks brought this lawsuit alleging Collection Center's attempt to collect the $3,034.21 in interest violated the Act. In his complaint, Weeks alleged that Collection Center, as an assignee of Medcenter, committed an unfair and deceptive debt collection practice by trying to collect interest to which neither Medcenter nor Collection Center was entitled under contract or North Dakota law. Weeks alleged Medcenter purportedly had a policy of not collecting interest and failed to make interest disclosures statutorily required of medical service providers. Collection Center moved for summary judgment in the district court, which Weeks opposed.

[¶4] The district court granted Collection Center's summary judgment motion and dismissed Weeks' action, stating the case was "fairly straightforward." The court held there was no disagreement that Weeks had incurred a debt to Medcenter for medical services that remained unpaid which constituted a "legal indebtedness" under N.D.C.C. § 47–14–05. The court

further held that, according to Weeks' affidavit, Weeks never received anything in writing from Medcenter indicating any interest would be assessed in the event of nonpayment of this debt after a specified period of time. The court concluded "as a matter of law, that [Collection Center was] rightfully entitled to collect interest from Weeks at the rate of six percent (6%) per annum on the legal indebtedness owed by Weeks to [Collection Center], as the assignee of Medcenter One."

## II

[¶ 5] Our standard of review on summary judgment is well-established:

Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.

*Bragg v. Burlington Res. Oil & Gas Co.*, 2009 ND 33, ¶ 5, 763 N.W.2d 481 (quoting *Erickson v. Brown*, 2008 ND 57, ¶ 22, 747 N.W.2d 34 (citations omitted)).

## III

[¶ 6] Congress enacted the Fair Debt Collection Practices Act in 1977 to eliminate "abusive, deceptive, and unfair debt collection practices." *Weiss v. Collection Center, Inc.*, 2003 ND 128, ¶ 9, 667 N.W.2d 567 (citing 15 U.S.C. § 1692). Under the Act, an action may be brought "in any appropriate United States District Court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see Weiss*, at ¶ 10. "Thus, an action for unfair debt collection practices under the Act may be maintained in either state or federal court." *Weiss*, at ¶ 10. As we did in *Weiss*, at ¶ 9, for purposes of this case we will assume Weeks is a "consumer," Collection Center is a "debt collector," and the money owed to Medcenter is a "debt," as defined under the Act. *See Weiss*, at ¶ 9 (citing 15 U.S.C. § 1692a).

[¶ 7] In his complaint, Weeks alleged that Collection Center violated the Act by engaging in a deceptive and abusive debt collection practice by trying to collect interest to which neither Medcenter nor Collection Center was entitled under contract and North Dakota law. Weeks specifically alleged that Collection Center violated the Act, 15 U.S.C. § 1692e(2)(A), when it falsely represented the character, amount, or legal status of Weeks' alleged debt by stating Weeks owed interest on the alleged debt.

### A

[¶ 8] Weeks argues that when a "medical services provider," as defined in N.D.C.C. § 13–01–14.1, fails to make the disclosures required under N.D.C.C. § 13–01–15, the provider may not later attempt to collect six percent interest allowed under N.D.C.C. § 47–14–05. It is undisputed that Medcenter is a "medical services provider" under N.D.C.C. § 13–01–14.1

and that Medcenter assigned Weeks' debt to Collection Center for collection purposes.

[¶ 9] The major issue on appeal therefore involves the proper interpretation and application of N.D.C.C. §§ 13–01–14.1, 13–01–15, and 47–14–05.[1] We have explained our standard for interpreting statutes:

> The interpretation of a statute is a question of law, which is fully reviewable on appeal. *B.D.H. v. Mickelson,* 2010 ND 235, ¶ 4, 792 N.W.2d 169. Our primary objective in interpreting a statute is to determine the legislature's intent, and we initially look to the language of the statute to determine that intent. *Id.* at ¶ 6. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless they are defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. The letter of a statute cannot be disregarded under the pretext of pursuing its spirit when the language of the statute is clear and unambiguous. N.D.C.C. § 1–02–05.

*Interest of D.J.,* 2011 ND 142, ¶ 10, 800 N.W.2d 333.

[¶ 10] Section 13–01–14.1, N.D.C.C., governs a medical services provider's ability to impose "late payment charges" on accounts receivable for medical services:

1. This section applies to a creditor that is a medical services provider for debts incurred in providing medical services.

2. A creditor that is a medical services provider may not charge, receive, or collect a *late payment charge* on money due on an account receivable for medical services except as provided under this section. For purposes of *late charges on accounts receivable under this section:*

   a. An account for medical services, except an account for medical services of a licensed nursing facility or basic care facility, does not become delinquent until ninety days have passed following receipt of the billed medical services; and

   b. An account for medical services of a licensed nursing facility or basic care facility does not become delinquent until forty-five days have passed following billing of the medical services.

3. The account receivable *late payment charge allowed under this section* may not be charged unless, when the obligation was incurred, the creditor did not intend to extend any credit and late payment of the obligation was unanticipated.

4. A creditor that is not a hospital may charge, receive, and collect an account receivable *late payment charge under this section* at a rate that does not exceed one percent per month. A creditor that is a hospital may charge, receive, and collect an account receivable *late payment charge under this section* at a rate that does not exceed

1. Section 13–01–14.1, N.D.C.C., was enacted in 2007, *see* 2007 N.D. Sess. Laws ch. 139, § 2; however, provisions regarding limitations on a "medical service provider" imposing a "late payment charge" were previously contained in various form in N.D.C.C. § 13–01–14. Although the record suggests Weeks received medical services and incurred debt relating to those services going back to at least 2002, and potentially 1998, Weeks has not argued that prior versions of the statutes require a different result and limits his argument on appeal to application of the current law. We likewise limit our analysis to interpreting the current statutes.

one percent per month, not to exceed twenty-five dollars per month.

5. *Notwithstanding a higher rate or amount that may be allowed under any other law* or agreed to in any written or verbal agreement, *the finance charge, credit service charge, or rate of interest for an extension of credit* for medical services which is charged by:

 a. A medical services provider that is not a hospital may not exceed one percent per month.

 b. A hospital may not exceed one percent per month, not to exceed twenty-five dollars per month.

(Emphasis added.)

[¶ 11] To impose the "late payment charge under [N.D.C.C. § 13–01–14.1]," a "medical services provider" creditor must also provide the debtor with a periodic statement:

1. A creditor may not charge the account receivable *late payment charge provided for under section 13–01–14 or 13–01–14.1* unless the creditor promptly supplies the debtor with a statement as of the end of each monthly period, or other regular period agreed upon by the creditor and the debtor, in which there is any unpaid balance.

2. Such statement must state, in any order, the following:

 a. The percentage amount of the *late payment charge which will be charged* beginning thirty days after the obligation is incurred for purposes of section 13–01–14, or *beginning after the billed medical services become delinquent for purposes of section 13–01–14.1.*

 b. The unpaid balance at the end of the period.

 c. An identification of any amount debited to the debtor's account during the period.

 d. The payments made by or for the debtor to the creditor during the period.

 e. The amount of the late payment charge.

3. Additional items may be included in the statement to explain the computations made in determining the amount to be paid by the debtor.

N.D.C.C. § 13–01–15 (emphasis added).

[¶ 12] Section 47–14–05, N.D.C.C., is a general prejudgment interest statute and provides for interest on "any legal indebtedness":

*Interest for any legal indebtedness must be at the rate of six percent per annum unless a different rate not to exceed the rate specified in section 47–14–09 is contracted for in writing.* All contracts must bear the same rate of interest after maturity as they bear before maturity, and any contract attempting to make the rate of interest higher after maturity is void as to the increase of interest, except for a charge for late payment penalty charged in addition to interest which may not exceed fifteen dollars or fifteen percent of the late payment, whichever is less, unless otherwise agreed to in any commercial, agricultural, or real estate note or mortgage.

(Emphasis added.)

[¶ 13] We have said that "post-maturity interest rates and late fees are limited [under N.D.C.C. § 47–14–05]." *T.F. James Co. v. Vakoch,* 2000 ND 9, ¶ 8, 604 N.W.2d 459; *see also Royal Jewelers, Inc. v. Kopp,* 365 N.W.2d 525, 527 (N.D.1985). This Court has explained that N.D.C.C. § 47–14–05 governs interest after a debt's maturity and is considered compensation for damages for the wrongful detention of

money. *See Overboe v. Brodshaug*, 2008 ND 112, ¶ 26, 751 N.W.2d 177; *T.F. James*, at ¶ 7; *Oil Inv., Inc. v. Dallea Petroleum Corp.*, 152 N.W.2d 415, 418 (N.D.1967); *see also Troutman v. Pierce, Inc.*, 402 N.W.2d 920, 924 (N.D.1987) (holding prejudgment interest under N.D.C.C. § 47–14–05 proper in breach of contract case); *Royal Jewelers*, 365 N.W.2d at 527 (concluding that if N.D.C.C. § 13–01–14 did not apply, creditor would be limited to the presumed rate of six percent per annum under N.D.C.C. § 47–14–05).

■ [¶ 14] Section 32–03–04, N.D.C.C., provides that "[e]very person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in the person upon a particular day, also is entitled to recover interest thereon from that day . . . ." We have therefore said that absent "a specific contractual rate of interest, prejudgment interest must be calculated at the *prescribed legal rate of interest* in legal and equitable actions." *Stockman Bank of Montana v. AGSCO, Inc.*, 2008 ND 74, ¶ 6, 747 N.W.2d 516 (emphasis added). *See also Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 59, 751 N.W.2d 206; *Kaler v. Kraemer*, 1999 ND 237, ¶ 24, 603 N.W.2d 698; *Hirschkorn v. Severson*, 319 N.W.2d 475, 480 (N.D.1982). Specifically, "[p]rejudgment interest is calculated at the rate provided in N.D.C.C. § 47–14–05; after judgment, interest is calculated at the rate prescribed by N.D.C.C. § 28–20–34." *Stockman Bank*, at ¶ 6; *see also Bismarck Realty Co. v. Folden*, 354 N.W.2d 636, 641–42 (N.D.1984).

[¶ 15] Weeks contends that while Collection Center relies on "general statutes" allowing prejudgment interest at a six percent interest rate, he relies on statutes that deal explicitly with "interest charges" made by medical services providers, like Medcenter, and that require disclosures. Although Weeks interchangeably uses the terms "late payment charge" and "interest," these terms are in fact distinct concepts under N.D.C.C. §§ 13–01–14.1, 13–01–15, and 47–14–05.

[¶ 16] Sections 13–01–14.1 and 13–01–15, N.D.C.C., specifically allow a medical services provider to impose a "late payment charge" on accounts receivable if the circumstances are met under N.D.C.C. § 13–01–14.1 and the disclosures are made under N.D.C.C. § 13–01–15. Under N.D.C.C. § 13–01–14.1(3), the "late payment charge" defined in the particular statute is allowed only when "the creditor did not intend to extend any credit and late payment of the obligation was unanticipated" at the time the obligation was incurred. Section 13–01–15, N.D.C.C., then provides the requisite statement contents necessary to impose the "late payment charges." However, here, Collection Center has not attempted to collect the "late payment charge" provided for under N.D.C.C. § 13–01–14.1. Rather, Collection Center only sought to collect the statutory prejudgment interest at the presumed annual rate of six percent under N.D.C.C. § 47–14–05.

[¶ 17] Regarding interest permitted by other statutes or agreements, N.D.C.C. § 13–01–14.1(5) states that "[n]otwithstanding a higher rate or amount that may be allowed under any other law or agreed to in any written or verbal agreement, the finance charge, credit service charge, or rate of interest for an extension of credit for medical services which is charged by . . . [a] medical services provider that is not a hospital may not exceed one percent per month[, or by] . . . [a] hospital may not exceed one percent per month, not to exceed twenty-five dollars per month." This subsection specifically limits or caps the "finance charge, credit service charge, or

*rate of interest* for an extension of credit for medical services" charged by either a medical services provider or a hospital where the "late payment charge under this section" does not apply. *Id.* (emphasis added). This subsection acknowledges other statutory or contractual grounds for interest, other than the defined "late payment charge," may exist and mandates the same limits on the amount as the "late payment charge." *Id.* Neither this subsection nor N.D.C.C. § 13–01–15, however, requires the periodic statements necessary to collect the "late payment charge under [N.D.C.C. § 13–01–14.1]." *See* N.D.C.C. § 13–01–14.1(5); N.D.C.C. § 13–01–15.

[¶ 18] Weeks contends, however, N.D.C.C. § 13–01–14.1(2) controls the disposition of this case. Section 13–01–14.1(2) provides in part: "A creditor that is a medical services provider may not charge, receive, or collect a late payment charge on money due on an account receivable for medical services except as provided under this section." Based on this subsection, Weeks essentially argues any interest charged by a medical services provider is a "late payment charge" subject to the statement requirement of N.D.C.C. § 13–01–15. Section 13–01–14.1(3), N.D.C.C., however, limits the "late payment charge" permitted under the section to situations when "the creditor did not intend to extend any credit and late payment of the obligation was unanticipated." Section 13–01–14.1(5), N.D.C.C., on the other hand, acknowledges other statutory and contractual bases for interest and mandates the same limits on the amounts that can be imposed as those imposed on late payment charges. The plain reading of the statutes indicates that "late payment charge" and "interest" are distinct and the periodic statements required under N.D.C.C. § 13–01–15 for late payment charges are not required for other statutory or contractual grounds for interest.

[¶ 19] Weeks further argues that the district court erred in relying on *Royal Jewelers, Inc. v. Kopp*, 365 N.W.2d 525 (N.D.1985), for the proposition that the creditors are not foreclosed from collecting the presumed rate of interest of six percent under N.D.C.C. § 47–14–05. Weeks contends the critical distinction between this case and *Royal Jewelers* is that while no law regulates what jewelry stores can charge in interest, there is law explicitly regulating what and how "medical service providers" may charge. We believe our decision in *Royal Jewelers* supports the disposition in this case. In *Royal Jewelers*, 365 N.W.2d at 527, this Court discussed the application of N.D.C.C. § 47–14–05. This Court initially addressed whether the consumer and the creditor had an agreement which satisfied N.D.C.C. § 13–01–14, permitting the creditor to charge a finance charge of up to one and one-half percent per month. *Id.* at 527. In deciding that a material fact issue existed, this Court held:

> There is no evidence of a retail installment contract, a revolving charge account agreement, or any other contract in writing about interest or finance charges between Royal Jewelers and Kopp. Therefore, unless Section 13–01–14 applies, there is no legal or contractual basis for a 1.5% per month finance charge, and Royal Jewelers would be limited to the presumed rate of interest of 6% per annum under N.D.C.C. § 47–14–05.

*Royal Jewelers*, 365 N.W.2d at 527 (footnotes and citations omitted). This Court held that, even if Royal Jewelers did not meet the requirements of N.D.C.C. § 13–01–14 permitting the late payment charge, it would still be allowed the presumed rate of interest under N.D.C.C. § 47–14–05.

[¶ 20] Likewise, in the present case, it is undisputed that Collection Center was not pursuing the "late payment charge" provided in N.D.C.C. § 13–01–14.1, and would be precluded from seeking the twelve percent per annum "late payment charge" provided by the statute. However, this does not preclude Collection Center from seeking the legal rate of prejudgment interest under N.D.C.C. § 47–14–05. This statute plainly states that "[i]nterest for any legal indebtedness must be at the rate of six percent per annum." Notably, this statute's second sentence also recognizes that a "late payment penalty" is separate from "interest" when it states, "except for a charge for late payment penalty charged in addition to interest." Thus, the concepts of a "late payment charge" and "interest" contained in the statute are distinct.

[¶ 21] For a medical services provider to impose a "late payment charge" on an account receiveable, it must comply with the requirements of disclosure under N.D.C.C. § 13–01–15. To the extent a medical services provider extends credit for medical services or is entitled to statutory interest, the rate of interest is limited to one percent per month or twelve percent per annum. N.D.C.C. § 13–01–14.1(5)(b).[2] Under N.D.C.C. § 47–14–05, unless a different rate is contracted for, the interest for "any" legal indebtedness is six percent per annum. Construing and harmonizing the statutes together, we conclude that prejudgment interest under N.D.C.C. § 47–14–05, is not a "late payment charge" contemplated under N.D.C.C. §§ 13–01–14.1 or 13–01–15; the amount of prejudgment interest however cannot exceed twenty-five dollars per month for medical services provided by a hospital under N.D.C.C. § 13–01–14.1(5)(b).

[¶ 22] We conclude that, as a matter of law, a medical services provider may collect prejudgment interest under N.D.C.C. § 47–14–05, without making the disclosures required under N.D.C.C. § 13–01–15. We therefore affirm the district court's decision granting summary judgment.

## B

[¶ 23] Weeks argues alternatively that even if N.D.C.C. § 47–14–05 does apply, the statute's requirement that a rate different from six percent be "contracted for in writing" was met by Medcenter's own writings consisting of the bill summary provided by Medcenter to the consumer. Weeks contends that because the billing summary does not contain interest, Medcenter contracted for a zero percent rate of interest. Weeks also asserts other evidence shows a zero percent interest rate, including the deposition of Medcenter's patient account supervisor, who purportedly testified in another lawsuit that Medcenter did not charge interest.

[¶ 24] Collection Center maintains Medcenter did not "contract" to charge no interest. Collection Center argues the billing summary contains no representation, either affirmative or negative, regarding interest. Collection Center contends that N.D.C.C. § 47–14–05 provides for a

---

**2.** We note that for medical services provided by a hospital under N.D.C.C. § 13–01–14.1(5)(b), "[n]otwithstanding a higher rate *or amount* that may be allowed under any other law," interest charged for medical services by "[a] hospital may not exceed one percent per month, *not to exceed twenty-five dollars per month*" (emphasis added). Weeks' Medcenter hospital bills are not in the record. Weeks does not argue on appeal, nor is there evidence in the record, that the monthly interest under N.D.C.C. § 47–14–05 of six percent per annum exceeded the twenty-five dollar per month limit found in N.D.C.C. § 13–01–14.1(5). We therefore do not consider this issue.

six percent interest on legal indebtedness unless a different rate is contracted for in writing, not contracted for by silence. Collection Center further contends the deposition testimony relied upon by Weeks, purporting that Medcenter does not charge interest, is not the equivalent of a different interest rate being contracted for in writing.

[¶ 25] This Court's decision in *Allen v. Miller*, 84 N.W.2d 571 (N.D.1957), is instructive. In *Allen*, at 572, the plaintiff sought to collect from the defendant the principal of two promissory notes, with interest on the notes at the then legal rate of four percent under N.D.R.C. 1943 § 47–1405, the predecessor statute to N.D.C.C. § 47–14–05. The plaintiff did not claim he was entitled to interest on the notes before maturity, conceding that the notes themselves bore no interest. *Id.* at 572. However, the defendant contended that because the notes bore no interest before maturity, allowing interest after the notes became due would violate N.D.R.C. 1943 § 47–1405. *Id.* at 573. This Court held that where a contract provided for no interest, damages may still be awarded for the breach of contract which was measured by the legal rate of interest from the time of breach. *Id.* at 574. Our Court reasoned:

> [I]nterest is declared to be compensation. It may be a sum contracted to be paid for the use of money or damages for the withholding of money after it should have been paid to one lawfully entitled thereto.... [W]hen money is wrongfully withheld or used without the consent of the owner, interest may be awarded as compensation to the owner of the money. In this respect interest is like compensatory damages for the wrongful withholding of property and such damages are usually measured by the value of the use or loss of use. In terms of interest that value is fixed by

statute at the legal rate unless the parties have contracted for the rate to be paid after maturity.

*Id.* at 573–74. This Court further explained:

> The defendant would have us extend the scope of this statute [N.D.R.C. 1943 § 47–1405] beyond its original purpose and, by construction, prohibit a contract which would provide that interest should begin to run from maturity rather than the date of the contract. Such a contract has no earmarks of the evil which the statute was intended to suppress. By its terms our statutory provision applies to contracts that bear one rate of interest before maturity and a higher rate afterward.
>
> We will not adopt a rule that will permit one who has been favored by being allowed another's money without compensation for a definite period to violate his agreement to pay and continue in default beyond that period without becoming liable for interest if contracted to be paid after default or in the absence of a contract at the legal rate.

*Allen*, 84 N.W.2d at 574. This Court concluded that, even in the context of a promissory note which bore no interest before maturity and was silent regarding interest after maturity, the note holder was still entitled to interest under N.D.R.C. 1943 § 47–1405. Weeks' obligation, however, does not even involve a note charging no interest.

[¶ 26] Here, Weeks contends that because Medcenter did not charge interest in its billing summary and purportedly had a policy of not charging interest, that Medcenter had in fact "contracted" with him for a zero percent interest rate, precluding the legal rate under N.D.C.C. § 47–14–05. Weeks also acknowledges that the district court cited his affidavit that he had never

received anything in writing from Medcenter that any interest would be assessed in the event of nonpayment after a specified period of time. Based upon our review of the record, we find nothing to support a contract between Weeks and Medcenter to charge zero percent interest on the amount due for the services provided by Medcenter.

[¶ 27] We conclude that Medcenter's failure to charge interest prior to seeking a judgment on the account does not preclude statutory prejudgment interest under N.D.C.C. § 47–14–05.

## IV

[¶ 28] We have considered the remaining issues and arguments raised by Weeks and find them to be either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 29] GERALD W. VANDE WALLE, C.J., BRUCE E. BOHLMAN, S.J. and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.

[¶ 30] The Honorable Bruce E. Bohlman, S.J., sitting in place of Crothers, J., disqualified.