# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 235

Fonda Jo Powell and Mary T. Henke, Co-Personal
Representatives of the Estate of June A. Slagle,
Helen Verhasselt, Trustee of the June Slagle
Family Mineral Trust,                                      Plaintiffs and Appellants

     v.

Statoil Oil & Gas LP, now known as Equinor
Energy LP,                                                Defendant and Appellee

## No. 20230098

Appeal from the District Court of McKenzie County, Northwest Judicial
District, the Honorable Robin A. Schmidt, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Jordon J. Evert, Williston, ND, for plaintiffs and appellants.

Spencer D. Ptacek (argued) and Lawrence Bender (on brief), Bismarck, ND, for
defendant and appellee.

**McEvers, Justice.**

[¶1]   Plaintiffs appeal from a judgment of dismissal entered after an order granting Statoil Oil & Gas LP's motion for summary judgment concluded a dispute of title allowed Statoil to suspend royalty payments and Plaintiffs are not entitled to statutory interest. Plaintiffs argue the district court erred in concluding there was a title dispute. Statoil argues this action is barred by the statute of limitations. We reverse, concluding the action is not barred by the statute of limitations and the court erred in concluding Statoil lawfully suspended royalty payments, and remand for further proceedings.

I

[¶2]   June Slagle owned mineral interests in McKenzie County prior to her death on April 23, 2016. One mineral interest was a life estate interest. The June Slagle Family Mineral Trust (the "Trust") owned the remainder interest in the life estate minerals.

[¶3]   In April 2010, an oil and gas lease for June Slagle's life estate minerals was recorded in the McKenzie County Recorder's Office. The lease was between "Fonda Powell, power of attorney for June Slagle" and Brigham Oil and Gas L.P., and executed by "Fonda Powell POA." Powell is June Slagle's daughter; Brigham was eventually acquired by Statoil, n/k/a Equinor Energy LP. The lease stated the lessee would pay the lessor a 20% royalty. Brigham issued a check to "June Slagle [&] Fonda Powell POA" for $223,980 as consideration for the lease. A power of attorney instrument was never recorded in the McKenzie County Recorder's Office.

[¶4]   In October 2011, the Patent Gate 7-6 #1H well was spud. The Patent Gate well produces from a spacing unit comprised of land which includes the life estate minerals and began producing in April 2012. Statoil is the operator of the well, and production or drilling operations have continued since first production. June Slagle was never paid royalties during her lifetime for her life estate mineral interest. In April 2017, Statoil paid the Trust approximately

$750,060 for the suspended royalties attributable to the life estate mineral interest.

[¶5]   In May 2019, Plaintiffs commenced this action, alleging Statoil breached its obligation to timely pay royalties and sought statutory interest. Statoil answered and moved for summary judgment, arguing Plaintiffs' claims are barred by the statute of limitations and it was permitted to suspend royalty payments due to a dispute of title. Statoil declared it suspended the life estate royalty payments because June Slagle's power of attorney instrument was never recorded. Plaintiffs responded and filed a cross-motion for summary judgment along with exhibits and an affidavit of Fonda Powell. Powell stated she provided Brigham a copy of her mother's power of attorney instrument when the lease was executed and neither she nor her mother, to the best of her knowledge and belief, were contacted by Brigham or Statoil informing them of the alleged title defect created through the failure to record the power of attorney. Powell stated that she did not become aware of the suspended life estate mineral royalties until she notified Statoil of her mother's death. Plaintiffs filed a "Durable Power of Attorney of June A. Slagle," executed in 2005 by her son, Gayle Slagle, stating June Slagle designates her daughters Fonda Powell and Mary Henke as her co-attorneys in fact. Statoil acknowledges that Brigham received this document.

[¶6]   After oral argument on the motions, the district court granted summary judgment in favor of Statoil, concluding a title dispute existed allowing Statoil to suspend royalty payments. The court entered a judgment of dismissal.

## II

[¶7]   Our summary judgment standard of review is well established:

> Summary judgment under N.D.R.Civ.P. 56 is a procedural device for the prompt resolution of a controversy on the merits if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. Summary judgment is appropriate if the issues in the case are such that the resolution of any factual disputes will not alter the result. Whether the district

2

court properly granted summary judgment is a question of law that we review de novo on the entire record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.

*Vic Christensen Min. Tr. v. Enerplus Res. (USA) Corp.*, 2022 ND 8, ¶ 8, 969 N.W.2d 175.

### III

[¶8] Statoil argues this action is barred by the statute of limitations. Plaintiffs contend this issue is not properly before us because the district court did not address the issue. Plaintiffs argue our ruling on the matter would be an inappropriate advisory opinion and contrary to the Court's precedent requiring a cross-appeal.

[¶9] "It is well established that courts will not give advisory opinions on abstract legal questions, and an action will be dismissed if there is no actual controversy left to be determined and the issues have become moot or academic." *Somerset Ct., LLC v. Burgum*, 2021 ND 58, ¶ 9, 956 N.W.2d 392. Because the district court dismissed the case on the merits, it did not address the statute of limitations issue. To the extent the three-year statute of limitations may apply, as Statoil argues it does, and the relevant facts are not in dispute, the issue was ripe for summary judgment. The court's refraining from ruling on the issue does not render the issue moot. Otherwise, the court could unilaterally moot any issue by not ruling on the issue. Nor is the issue academic or raising an abstract legal question. Statoil alleged and argued the statute of limitations issue in the district court. An appellee is entitled to attempt to save a judgment by urging any ground asserted in the district court, regardless of whether a cross-appeal is filed. *Hussiene v. Director, N.D. Dep't of Transp.*, 2021 ND 126, ¶ 11, 962 N.W.2d 400. Because Statoil is requesting affirmance of the judgment and is not requesting a more favorable result on appeal, Statoil was not required to cross-appeal. *Tkach v. Am. Sportsman, Inc.*, 316 N.W.2d 785, 788 (N.D. 1982) ("In the absence of a cross-appeal, the appellee

3

may only seek affirmance of the judgment, and may not seek a more favorable result on appeal than he received in the trial court.").

[¶10] Statoil and Plaintiffs disagree as to the applicable statute of limitations. Interpreting a statute of limitations is a question of law fully reviewable on appeal. *Kittleson v. Grynberg Petroleum Co.*, 2016 ND 44, ¶ 22, 876 N.W.2d 443. Statoil argues the applicable statute of limitations is N.D.C.C. § 28-01-17(2), which states, "The following actions must be commenced within three years after the claim for relief has accrued: . . . 2. An action upon a statute for a penalty or forfeiture, if the action is given to the party aggrieved, or to such party and the state, unless the statute imposing it prescribes a different limitation." Statoil asserts Plaintiffs' claim for statutory interest of 18% under N.D.C.C. § 47-16-39.1 is an action upon a statute for a penalty that is given to the party aggrieved. Section 47-16-39.1, N.D.C.C., states in relevant part:

> The obligation arising under an oil and gas lease to pay oil or gas royalties to the mineral owner . . . is of the essence in the lease contract . . . . If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner . . . within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought . . . the operator thereafter shall pay interest on the unpaid royalties . . . at the rate of eighteen percent per annum until paid.

Statoil contends the 18% interest is "not truly 'interest,'" but a penalty, citing definitions of "interest," the legislative history of N.D.C.C. § 47-16-39.1, and cases from other jurisdictions describing similar statutory schemes as penalties.

[¶11] Statoil does not argue N.D.C.C. § 47-16-39.1 is ambiguous. "This Court does not examine legislative history unless a statute is ambiguous." *City of Jamestown v. Nygaard*, 2021 ND 172, ¶ 18, 965 N.W.2d 47.

> "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." *See* N.D.C.C. § 1-02-02. Statutes are construed as a whole and are harmonized to give meaning to related

4

provisions. N.D.C.C. § 1-02-07. If the relevant language is clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1-02-05.

*Van Sickle v. Hallmark & Assocs., Inc.*, 2013 ND 218, ¶ 52, 840 N.W.2d 92. Statoil's argument that the Legislature intended for the 18% interest to be a penalty is not persuasive. Turning to the very next section in that chapter, N.D.C.C. § 47-16-39.2 requires the district court to assess "a civil *penalty* of two thousand dollars per day for each day the person obligated to pay royalties under the lease failed to send the oil and gas royalty payment and production records" to the board of university and school lands in a successful proceeding under that section. (Emphasis added.) The Legislature is aware of the difference between "interest" and a "penalty," and although there may be an upper limit where interest becomes a penalty, we will not second-guess its use of the word "interest" here. *Cf. Iverson v. Ingersoll-Rand Co.*, 125 F. App'x 73, 76-77 (8th Cir. 2004) (concluding employee's claim for $100/day sanction against employer for untimely disclosure of information under ERISA was an action upon a statute for a penalty and thus time barred under N.D.C.C. § 28-01-17(2)); *see also Weeks v. Geiermann*, 2012 ND 63, ¶¶ 12-14, 814 N.W.2d 792 (explaining statutory prejudgment interest rate under N.D.C.C. § 47-14-05 is considered compensation for damages for the wrongful detention of money at a prescribed rate of interest).

[¶12] Plaintiffs argue the ten-year statute of limitations in N.D.C.C. § 28-01-15(2) applies as determined in *Kittleson*. Under N.D.C.C. § 28-01-15(2), "An action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property" must be commenced within ten years after the claim for relief has accrued. In *Kittleson*, we analyzed which statute of limitations applied to a lessor's breach of contract action for the underpayment of royalties. We concluded the ten-year statute of limitations under N.D.C.C. § 28-01-15(2) applied to a breach of contract action for the underpayment of royalties:

> The legislature has stated that the obligation to pay royalties "is of the essence in the [oil and gas] lease contract." N.D.C.C. § 47-16-39.1. . . . [T]he provision here regarding the

payment of royalties is contained in the lease. We conclude the obligation to pay royalties under an oil and gas lease is a contract contained in a conveyance or instrument affecting title to real property within the meaning of N.D.C.C. § 28-01-15(2). We hold the ten-year limitation period in N.D.C.C. § 28-01-15(2) applies to Kittleson's breach of contract action for the underpayment of royalties under the oil and gas lease.

*Kittleson*, 2016 ND 44, ¶ 37 (first alteration in original).

[¶13] Here, the oil and gas lease stated the lessee would pay the lessor a 20% royalty. The obligation arising under a lease to pay royalties "is of the essence." Statoil failed to timely pay royalties. Although Statoil has since paid all of the suspended royalties to Plaintiffs, their action remains, at least in part, one for breach of the lease. Under N.D.C.C. § 47-16-39.1, the 18% interest is a part of the mineral owner's damages; it is compensation for the operator's breach of its obligation to make timely royalty payments and an alternative remedy to cancellation of the lease. The basis of the claim, however, is nonpayment, underpayment, or, as is the case here, untimely payment of royalties arising from the oil and gas lease. *See Van Sickle*, 2013 ND 218, ¶ 29 (stating that under N.D.C.C. § 47-16-39.1 "a failure to pay oil and gas royalties constitutes a breach of the obligation arising under the oil and gas lease"). Plaintiffs alleged Statoil untimely paid royalties and sought statutory interest, costs, and attorney's fees as damages. Thus, we conclude as a matter of law that the ten-year statute of limitations, N.D.C.C. § 28-01-15(2), which in *Kittleson* applied to a claim for underpayment of royalties under an oil and gas lease, applies here to the claim for untimely payment of royalties under the oil and gas lease. Because Plaintiffs' claims accrued within ten years of commencing this action, their action is timely under N.D.C.C. § 28-01-15(2).

IV

[¶14] Plaintiffs argue the district court erred in concluding a dispute of title existed allowing Statoil to suspend royalties. Section 47-16-39.1, N.D.C.C., allows the mineral owner to receive 18% interest on untimely royalty payments, but does not apply "in the event of a dispute of title existing that would affect distribution of royalty payments." Accordingly, suspension of

royalty payments is lawful under N.D.C.C. § 47-16-39.1 when there is a dispute of title that would affect distribution of royalty payments. *See Vic Christensen*, 2022 ND 8, ¶ 10.

[¶15] In *Vic Christensen*, the well operator suspended royalty payments to two sets of mineral owning trusts after informing them of a title dispute. 2022 ND 8, ¶ 5. The trusts sued each other to quiet title in the mineral and royalty interests. *Id.* at ¶ 6. Although the trusts eventually stipulated to their interests and the operator paid their suspended royalties, the trust defendants sought statutory interest against the operator. *Id.* at ¶¶ 6-7. The district court granted summary judgment in favor of the trust defendants, concluding there was no dispute of title allowing the operator to suspend royalty payments. *Id.* at ¶¶ 7, 9. We reversed, concluding a dispute of title existed where the mineral owners sued each other to quiet title in their interests. *Id.* at ¶ 10. We rejected the trust defendants' argument that the position taken by the operator in the title dispute ultimately had to be proven successful to suspend royalties under the dispute of title provision of N.D.C.C. § 47-16-39.1. *Id.* at ¶ 11. Rather, the crucial facts were that the operator notified the mineral owners of a title discrepancy, and thereafter the mineral owners "sued each other to quiet title, undoubtedly creating a 'dispute of title' that would affect their royalty payments" from the operator. *Id.* Thus, we held the operator lawfully suspended royalty payments. *Id.*

[¶16] Here, there was no quiet title action between mineral owners claiming title to the same mineral interest. Nor does Statoil argue June Slagle's life estate interest was burdened or affected by another mineral owner's interest. Under N.D.C.C. § 47-16-39.4, "If the mineral owner and mineral developer disagree over the mineral owner's ownership interest in a spacing unit, the mineral developer shall furnish the mineral owner with a description of the conflict and the proposed resolution or with that portion of the title opinion that concerns the disputed interest." Unlike the operator in *Vic Christensen*, Statoil produced no evidence that it contacted June Slagle concerning a disputed interest or that it was suspending her royalties.

7

[¶17] Statoil argues that under *Vic Christensen* it does not matter whether its position on the title dispute is unsuccessful as long as the title dispute existed. We need not address the rationale of the district court or the various arguments made by the parties regarding whether a title dispute existed. When the dispute is between the mineral developer and the mineral owner, notice of the dispute is required. As stated above, N.D.C.C. § 47-16-39.4 requires the mineral developer to provide the mineral owner with a description of the title dispute and its proposed resolution or a title opinion concerning the disputed interest. Construing N.D.C.C. §§ 47-16-39.1 and 47-16-39.4 together, if an operator fails to notify a mineral owner of a title dispute affecting her distribution of royalties and fails to pay royalties within 150 days after oil or gas produced under the lease is marketed, and cancellation of the lease is not sought, the operator must pay interest on the unpaid royalties at 18% per annum until paid. Statoil did not present evidence that June Slagle was notified of a title dispute, and it is undisputed Statoil failed to pay royalties to June Slagle on her life estate interest during her lifetime. Accordingly, Statoil must pay interest at the rate of 18% on untimely paid royalties.

V

[¶18] We reverse the judgment of dismissal and order for summary judgment and remand for further proceedings consistent with this opinion.

[¶19] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

8